CITY OF KINGSPORT v. LANE.—243 S. W. (2d) 289.

East Section. July 15, 1951.

Petition for Certiorari denied by Supreme Court, October 9, 1951.

Penn, Hunter, Smith & Davis, of Kingsport, for plaintiff in error.

Cox, Epps, Miller & Wilson, of Kingsport, for defendant in error.

HALE, J. ██ ██ Lane sued the City of Kingsport for personal injuries he sustained while taking his young

son down a slide installed by the city in the J. Fred Johnson Park. It is averred the City had taken out liability insurance in the sum of $5,000.00 to protect it against tort claims by reason of the operation of said park, and that the insurer, Globe Indemnity Co., agreed not to defend any such suit on the ground the City was engaged in a governmental function. This allegation was necessary in view of the holding of our courts that the operation of a park is a governmental function with resultant immunity. City of Nashville v. Burns, 131 Tenn. 281, 174 S. W. 1111, L. R. A. 1915D, 1108; Rector v. Nashville, 23 Tenn. App. 495, 134 S. W. (2d) 892; Williams v. Town of Morristown, 32 Tenn. App. 274, 222 S. W. (2d) 607.

The substance of the allegation of negligence is that a bolt used in uniting two sections of this slide had been improperly installed and left in a dangerous condition in that it was protruding some three or four inches, which was known to the City and not known to plaintiff, and that as he started down the slide with his young son in front of him, his right arm was caught in such projecting bolt, resulting in severe lacerations and a compound fracture.

There was a jury trial under the plea of general issue and resulted in a verdict for plaintiff in the sum of $4,250.00. The City moved for a new trial which was refused, resulting in this appeal.

The gist of the assignments of error is (1) there is no evidence to support the verdict, (2) Lane was a licensee, not an invitee, (3) the trial judge erred in stating that if a construction according to the highest state of the art was negligently done, the City would be liable, (4) the trial judge improperly refused to let the witness Immens testify whether the slide was for grown-ups or for chil-

dren; (5) the verdict was excessive; and (6) error was committed in the charge of the court.

The plaintiff, Lane, 34 years of age and married, was a resident of East Stone Gap, Virginia. On July 2nd, 1950, he, his wife, daughter and little son, aged four, went to Mrs. Lane's parent's home in Kingsport to have a family reunion. On the way to the residence of his mother-in-law, they passed the in-laws and were informed the reunion was to be held in this park, and then proceeded there. This park is owned and maintained by the city and has slides, tables and fountains for the benefit of the public. No charge is made for its use.

The slide in question is twelve feet above ground at its highest point, is 24 feet in length, and is 20 inches wide. On each side is a handrail about 4¼ inches high. It is in two sections which are united by means of bolts in flanges bradded on each section. There are two of these bolts on each flange. The top bolt, which is immediately under the bottom of the slide, is screwed into the threads on the opposite flange. About three inches below this bolt is the bolt causing the damage in question. It is what is known as a pressure bolt and passed through threads in the upper flange and against, but not into, the lower flange, and when screwed thereagainst puts pressure upon the edges of these two sections, forcing them together. For some unknown and unexplained reason this slide was furnished with pressure bolts of such length that even when the edges of these sections were forced together these bolts protruded 1½ inches above the flange. In other words, the bolt was much too long for this particular purpose, but it was the bolt furnished by the maker, a reputable and nationally known concern, with the slide. This excess portion of the bolt was parallel with and about 3½ to 4 inches below the bottom of the

right side of the slide. It had so existed since the slides were erected by the City 18 months previously. It is apparent from an inspection of the photographs filed in evidence that if a person using this slide were to get his arm caught between this bolt and the slide an injury would be probable. The proof shows this slide had been in use for 18 months without other accidents. It was designed for children primarily, altho it seems to have been used by adults with their children on the day in question. There is no showing that such use was forbidden by those in charge of the Park, or that it was unusual.

■ Mr. Lane's little four year old boy wanted to go down the slide. Other parents were taking their children down, so Mr. Lane put the boy ahead of him on the ladder reaching the top of the slide. Other people were ahead of him on the ladder, thereby preventing him from noticing this bolt in question. He is six feet two inches tall. His weight was not stated, but apparently he was slim in that he could sit in the slide (20 inches wide) and spraddle his legs so as to put his little boy in front of him. He then started down with one hand on the child, the other on the handrail. After going a short distance he released the child and checked his own speed so that the child could go down before him and be caught by others of the family at the bottom of the slide. After this momentary check he started down when his arm was caught by the bolt in question, jerking him back and to the right, then tearing loose, causing severe injuries. He said "To be honest, I don't know how my arm was when I got caught". It is manifest that if his arm had been on top of the handrail it would not have been caught, unless something else intervened. His arms were 30 inches long. His brother-in-law, J. E. Hale, who

was present, said Lane's hand was on top of the rail with his elbow down, and said "His shirt could have caught down that far. I don't know whether his shirt drug it into it or how, *but that is the way I saw it*." It is the theory of the City that Lane must have been in a reclining position and that he hooked his hands under the bottom of the slide, and was guilty of contributory negligence as a matter of law. The jury had the advantage of seeing and hearing the witnesses, and we cannot say there is no evidence to support their verdict.

Was Lane a mere licensee, or was he an invitee? The distinction between the duty owed these two classes is too well known to require a discussion.

 We think he was an invitee as one of the public. It is true that he was not a citizen of Kingsport, or of Sullivan County, or of Tennessee. We attach no importance to the fact that he was a resident of the Commonwealth of Virginia. He was in Kingsport and a member of the public for whom this park was created. There is no suggestion that the use of this park was limited to residents of Kingsport, or to those of Sullivan County or to those of Tennessee. Further, he was a member of a group composed in part of people who lived in or near Kingsport. There is nothing shown that would bar these residents from inviting others from going to the park.

The insurance policy in question provides the insurer "will never in any manner employ or threaten to employ any defense arising from the fact that the insured is a municipality." The coverage is not limited to citizens of Kingsport.

 We think the act of the City in taking out this insurance was simply a waiver of its immunity, Nashville

v. Burns, etc., supra, to the extent of the coverage of the policy.

It is well known that the authorities are greatly divided on the question of liability of a City for negligent operation of a park. The minority—although growing—opinion is that cities are liable as acting in a proprietary capacity. Our courts hold the maintenance of parks is a governmental function with resultant immunity. This seems to be the majority view.

By the purchase of this insurance the City waived its immunity to that extent; therefore, its liability should be determined under the line of authority first mentioned.

In 63 C. J. S., Municipal Corporations, Sec. 907b, pp. 314, 315, it is said: ''While a municipality is not an insurer of the safety of those who make use of its park facilities, and is not required to eliminate every danger, it is, when acting in a corporate or proprietary capacity, subject to the same measure of care in the performance of its duties and obligations arising out of ownership as any other person in possession and control of land, and must use reasonable or ordinary care to keep the premises and appliances in a reasonably safe condition for children and others rightfully using them.''

American Jurisprudence, Vol. 39, ''Parks, Squares and Playgrounds'', Sec. 35, pp. 830-832, says: ''With respect particularly to the liability of municipal corporations for injuries due to conditions in public parks, squares and playgrounds, the question usually depends upon whether the duties of the municipality are regarded as involving the exercise of a governmental or a proprietary function of the municipality. Due principally to differences of view in this connection, there is considerable conflict among the authorities. The view taken in a majority of the cases is that a municipality in maintaining a public

park, square or playground is engaged in a governmental activity, and therefore, in the absence of a statute, except in certain instances hereinafter noted, is not liable for injuries resulting from the negligence of its officers, agents or employees. In some jurisdictions, however, the courts are committed to the proposition that the city must exercise ordinary care in establishing, equipping, and caring for public parks, squares, etc., to make them reasonably safe for persons frequenting and using the grounds and equipment; and that it will be liable for injuries resulting from failure to do so. This rule has found support in numerous recent cases, including some from jurisdictions which had not previously considered the question; these decisions being grounded, for the most part, but not entirely, upon the theory that a municipality maintains such parks in its private or proprietary capacity; in distinction from functioning in its governmental capacity,'' and, further, ''Also where the rule of public liability for negligence prevails, such liability is, in the main, governed by the same rules that govern ordinary negligence cases.'' Ibid. p. 832.

Able counsel for the plaintiff in error cite and rely upon a number of cases holding there is no liability on the part of the City for injuries caused by negligence in the operation of parks and playgrounds, and which, primarily, are based upon the theory of governmental function and immunity. Except for the waiver we have heretofore noticed they would be applicable to the case at bar.

A great number of cases are discussed in annotations to Emmons v. City of Virginia, 152 Minn. 295, 188 N. W. 561, 29 A. L. R. 860; Byrnes v. City of Jackson, 140 Miss. 656, 105 So. 861, 42 A. L. R. 254; Baltimore v. State of Maryland, etc., 168 Md. 619, 179 A. 169, 99

A. L. R. 680; and Williams v. City of Longmont, 109 Colo. 567, 129 P. (2d) 110, 142 A. L. R. 1337, which go to this question of governmental versus proprietary capacity. In those cases which hold there is liability, the city is held to the duty of making the parks "reasonably safe", or to exercise "reasonable care" in the maintenance of the parks and equipment. This would appear to be sound. Having impliedly invited the public to use these facilities, those who accepted should not be deemed licensees, where there would be a right of action only if the injury was wilfully inflicted, Burroughs Add. Mach. Co. v. Fryar, 132 Tenn. 612, 179 S. W. 127, L. R. A. 1916B, 191, L. R. A. 1916B, 791, but should have the status of invitees, and, consequently, having a right of action if ordinary care was not exercised by the city to make such premises reasonably safe to such invitees. Worsham v. Dempster, 148 Tenn. 267, 255 S. W. 52; Chattanooga Whse. Co. v. Anderson, 141 Tenn. 288, 210 S. W. 153.

■ The City, having erected this slide by using unnecessarily long bolts, and having so maintained it for 18 months, was chargeable with knowledge of a potentially dangerous condition. In short, it had "superior knowledge" of a perilous condition which is the foundation of liability to invitees. I. C. Ry. Co. v. Nichols, 173 Tenn. 602, 118 S. W. (2d) 213; Park v. Sinclair Refining Co., 24 Tenn. App. 204, 142 S. W. (2d) 321.

This condition was not known to Lane and he could not observe it as he ascended the ladder because of the obstruction of his view by the people ahead of him.

■ We think the questions of negligence and contributory negligence were properly submitted to the jury, and that its finding is supported by material evidence.

The next assignment relates to a statement made by the court during a colloquy with counsel that if the slide

was constructed up "to the highest standard of the art, but if that highest state of the art is negligence they would still be liable and wouldn't relieve the city of responsibility if they were guilty of negligence."

In the charge to the jury the Court said: "In determining how all these matters are, Gentlemen: you look to all the evidence, including the expert testimony, and what they said about the slide being erected according to specifications, and up to the highest standards of the art, and it is for you to say from all the evidence, lay and expert, whether or not the defendant was guilty of negligence, and whether or not the plaintiff is entitled to recover."

We think it was for the jury to say whether or not the construction was up to the highest standard of the art, and, if so, whether or not that constituted negligence. "The customary way of doing a thing may be a negligent way." Smith v. Fisher, 11 Tenn. App. 273.

Error is assigned to the action of the trial judge in refusing to allow the witness Immens to answer "whether or not the slide is for grown-ups or children". What his answer would have been is not shown. This assignment must be overruled for the reason (a) the answer sought would have been cumulative in that the City witness, Mr. McHorris, had testified the slide was for "children", and (b) the transcript fails to show what the answer would have been. Holliston Mills v. McGuffin, 177 Tenn. 1, at page 15, 146 S. W. (2d) 357.

It is urged that the verdict is excessive. Lane suffered serious injuries; his forearm was lacerated and there was a compound fracture of the right ulna, resulting in a limitation of motion in his right elbow. His injuries were very painful and he was put under anesthesia for the operation. Medical and hospital bills were

about $150.00. He was off of work for fourteen weeks and had an earning capacity of $75.00 per week. At the time of the trial there was still a considerable limitation in the use of his elbow.

"The amount of the verdict is primarily for the jury to determine, and next to the jury the most competent person to pass upon the matter is the judge who presided at the trial." Reeves v. Catignani, 157 Tenn. 173, 7 S. W. (2d) 38. Also see Rose v. Snyder, 185 Tenn. 499, 206 S. W. (2d) 897; Foster & Creighton Co. v. Hale, 32 Tenn. App. 208, 222 S. W. (2d) 222.

We do not find anything in the record authorizing us to substitute our judgment for that of the jury and trial judge.

Complaint is made as to the charge of the court, which, after a general definition of negligence, is as follows:

"So that, Gentlemen of the Jury, if you find by a preponderance of the evidence, that the City, the defendant, owned and maintained this park for the pleasure and benefit of the public, that in keeping with this purpose it, among other things, erected the slide in question in said park, for the use and benefit of members of the public, who desired to use said park; that the plaintiff on the occasion in question, and his family, were members of the public, and were so using said park; and you further find, by a preponderance of the evidence, that in erecting and maintaining said slide that the defendant had installed it so that one bolt had been inserted near the base of the flange, and had been bolted tight with a bolt and tap, and in the second set of bolts the bolt had been improperly installed and left in a dangerous condition, so that about three or four inches of the bolt extended out beyond the flange and had not been screwed down so

as to be flush with the top of the flange, and that the defendant was guilty of negligence in so doing, and that such negligence was the direct and proximate cause of the plaintiff's injury, your verdict would be for the plaintiff and against the defendant.

"If, on the other hand, the plaintiff has failed to make out such case, and the evidence thereto is evenly balanced, your verdict would be for the defendant."

This is in accord with the views we have herein expressed.

The jury was thoroughly charged on the law of contributory negligence.

We find no error.

The judgment below is affirmed, with interest and cost against plaintiff in error and surety upon appeal bond.

Affirmed.