Glenn L. WILKERSON and Wife, Thelma Wilkerson, parents and next of kin of Gerald W. Wilkerson, Deceased, Plaintiffs–Appellants,

v.

Douglas L. ALTIZER and Wife, Ruby Altizer, and Angela L. Petree, Defendants–Appellees.

Court of Appeals of Tennessee, Eastern Section, at Knoxville.

April 2, 1992.

Rehearing Denied July 20, 1992.

Application for Permission to Appeal Denied by Supreme Court Oct. 26, 1992.

Robert E. Pryor, John K. Harber, Pryor, Flynn, Priest & Harber, Knoxville, for plaintiffs-appellants.

James T. Shea, IV, Poore, Cox, Baker, Ray & Byrne, Knoxville, for defendants-appellees.

OPINION

LEWIS, Judge.

This is an appeal by plaintiffs from the judgment entered on the jury's verdict in favor of the defendant Douglas L. Altizer and defendant Ruby Altizer and against defendant Angela Petree; the finding of the jury that the decedent Gerald W. Wilkerson was guilty of remote contributory negligence; and that therefore plaintiffs were entitled to recover only the sum of $5,000.00 from the defendant Angela L. Petree.

The pertinent facts are as follows:

On 5 July 1986, defendant Angela Petree hosted a social gathering at the farm of her step-father, defendant Douglas L. Altizer, and mother, defendant Ruby Altizer. Guests began arriving at the party at about 7:00 p.m.

The decedent Gerald Wilkerson arrived at the party at approximately 12:00 a.m. on 6 July 1986, along with one of his friends, Dexter Brewer. Mr. Wilkerson and his friend Dexter had come to the party from work. At the time Mr. Wilkerson arrived, some twenty-five people remained at the party.

All of the proof in the record is to the effect that Gerald Wilkerson was not intoxicated at any time while he was at the party. Dexter Brewer testified that he was "plum positive" that Mr. Wilkerson was not intoxicated.

After Mr. Wilkerson had been at the party for some thirty to forty-five minutes, he boarded a small boat belonging to defendant Mr. Altizer that was docked on a small pond on the Altizer farm. Mr. Wilkerson and Mr. Brewer were invited to go onto the boat, and voluntarily boarded it.

They had been on the boat for about fifteen minutes when two of the guests dove into the pond and began swimming towards the boat. The two who swam towards the boat did not indicate they were going to rock the boat until they were in the water and swimming towards the boat. Everyone in the boat, including Angela Petree, attempted to stop the two guests from capsizing the boat, but were unable to

do so. Mr. Wilkerson drowned when the two guests at the party capsized the boat. Mr. Wilkerson had not advised anyone at the party that he could not swim.

Robin Miller testified that before she boarded the boat, someone asked if everyone could swim and that she heard Mr. Wilkerson answer yes to the question.

John Ferrett testified by deposition, which was shown to the jury by video tape, that sometime after they had boarded the boat, "some people in the boat started acting silly and joking, I assumed at first, about going swimming. And that was the first time that someone said: 'Hey, can everybody swim?'" When that question was asked, John Ferrett didn't hear anyone say they couldn't swim.

When the two guests who had swam out to the boat started rocking the boat, John Ferrett felt that the boat was in imminent danger of capsizing, and he yelled out: "Can everybody swim?" There was no answer in response to his question.

No one at the party, including the defendants, had any notice that anyone intended to capsize the boat before the two people swimming out in the water stated that that was their intention. Prior to that time, it had been a quiet party, described by some as a "laid back party." There had been several boat rides on the pond that evening, but no one had attempted to capsize the boat prior to this time. No one felt threatened or endangered by the activities of the people at the party. Both the defendant, Douglas L. Altizer and his wife, defendant Ruby Altizer, had left the party and gone up to their house before the two guests capsized the boat and Mr. Wilkerson drowned.

Mr. Wilkerson was twenty-one years old at the time of his death. He did not have a driver's license or an automobile. He could not swim. He was at the time of his death attending Draughons Junior College and the most he had ever earned in one year during his life was $4,368.00.

Dr. John Moore, an economist, testified that an average college graduate in Gerald Wilkerson's age group would generate a gross income amounting to $11,000,000.00 over the course of his working life. This amounts to $220,000.00 every year for fifty years. Dr. Moore admitted that this figure was an "average" figure and that his calculations were not tailored to Gerald Wilkerson's personality and skill.

Plaintiffs' first issue is: "Did the Trial Court err by permitting defense counsel to cross-examine the defendant, Ruby Altizer, as an adverse witness during the defendants' proof after tendering Mrs. Altizer for cross-examination?"

Defendant Douglas L. Altizer and his wife, defendant Ruby Altizer, had left the party and gone up to their house before the two guests capsized the boat and Mr. Wilkerson drowned.

During defendants' proof, defendants' counsel tendered defendant Ruby Altizer for cross-examination in order to avoid the effects of the "missing witness rule." *See State v. Francis,* 669 S.W.2d 85, 88–89 (Tenn.1984). Defendants' counsel stated: "Your Honor, Mrs. Altizer is here. We don't know of anything that she has that would add to it. If Mr. Harber (plaintiffs' attorney) would like to examine her, she's available." Plaintiffs' attorney then took the opportunity to cross-examine the witness.

Following plaintiffs' examination of defendant Ruby Altizer, she was cross-examined by her attorney. Plaintiffs insist that the trial court erred in allowing defendants to ask Mrs. Altizer leading questions and that this questioning was prejudicial to their case and reversible error.

Tennessee Rule of Evidence 611(d) provides:

> When a party in a civil action calls an adverse party (or an officer, director, or managing agent of a public or private corporation, or of a partnership, association, or individual proprietorship which is an adverse party), interrogation on direct examination may be by leading questions. The scope of cross-examination under this paragraph shall be limited to the subject matter of the direct examination, and cross-examination may be by leading questions.

■ It is within the sound discretion of the trial court whether to allow a party to examine a witness by leading questions. However, even if the trial court erred in allowing Mrs. Altizer to be examined by leading questions, the error was harmless. The improper introduction of testimony which is cumulative or otherwise established by evidence in the record is harmless error. *City of Kingsport v. Lane*, 35 Tenn.App. 183, 193, 243 S.W.2d 289, 293 (1951). This rule is consistent with the standard of review set forth in Tennessee Rule of Appellate Procedure 36(b) which states:

"A final judgment from which relief is available and otherwise appropriate shall not be set aside unless, considering the whole record, error involving a substantial right more probably than not affected the judgment or would result in prejudice to the judicial process."

The testimony introduced on examination by the defendant through leading questions to Mrs. Altizer had already been established. The leading questions established that Angela Petree had been living away from home and this was already in the record through the testimony of Angela Petree. The leading questions established that there had been no "fighting" going on during the party. This evidence was already in the record through the testimony of Dexter Brewer and Nancy Robin Miller. Leading questions established that defendants Altizer did not expect the boat to be used that evening and that it had been stored in the darkness where it could not be seen. This information had already been established by Mr. Altizer's testimony. Leading questions established that no one indicated to Mrs. Altizer that they intended to get into the boat. Mrs. Altizer had already testified to this through questions by plaintiff-appellants' counsel. This issue is without merit.

Plaintiffs' second issue is: "Did the Trial Court err by failing to include in its jury charge the special jury requests submitted by plaintiffs' counsel?"

■ Plaintiffs submitted six special requests, all of which were denied with the exception of a portion of one request. On appeal, plaintiffs only cite the trial court's refusal to charge their special requests 1 and 2 as reversible error. Plaintiffs' first request was that the trial court charge Restatement (Second) of Torts, § 318, which in pertinent part is as follows:

*Duty of Possessor of Land or Chattels to Control Conduct of Licensee*—If the actor permits a third person to use land or chattels in his possession otherwise than as a servant, he is, if present, under a duty to exercise reasonable care so as to control the conduct of the third person as to prevent him from intentionally harming others or from so conducting himself as to create an unreasonable risk of bodily harm to them, if the actor (a) knows or has reason to know that he has the ability to control the third person, and (b) knows or should know of the necessity and opportunity for exercising such control.

So far as we are able to determine, Tennessee has not adopted Restatement (Second) of Torts, Section 318. Further, we are unable to find a case, and have been cited to none, which holds that the property owner has the duty to control the conduct of guests on his premises.

Plaintiffs cite *Hudson v. Gaitan*, 675 S.W.2d 699 (Tenn.1984). However, we find nothing in *Hudson* that says a property owner has a duty to control the conduct of persons invited to his or her premises. In *Hudson*, plaintiff was injured by a physical defect in the premises. The court, in *Hudson*, abolished the common law distinction between invitees and licensees and held that as to physical defects in the premises, "the duty owed is one of reasonable care under all of the attendant circumstances." 675 S.W.2d at 703.

Plaintiffs also rely on *Lindsey v. Miami Development Corp.*, 689 S.W.2d 856 (Tenn. 1985). *Lindsey* is likewise silent on the issue of controlling the conduct of guests. In *Lindsey*, the court stated: "We find that there was a social guest-host relationship between Ms. Lindsey and the defendant which created a duty on his part to exercise reasonable care to render aid to

her when [the defendant] knew or should have known that Ms. Lindsey was seriously injured." 689 S.W.2d at 860.

■ We are unable to find any Tennessee case which has held that the owner of premises has a duty to control the conduct of persons on their premises to prevent them from undertaking negligent conduct.

Our Supreme Court has never adopted Section 318, Restatement (Second) of Torts, and we decline to do so. The adoption of Restatement (Second) of Torts, Section 318 would impose a greater duty on the owners of private tenancies than our Supreme Court has been willing to place on the owners of business premises under the reasonable care standard. *See Cornpropst v. Sloan,* 528 S.W.2d 188 (Tenn.1975).

Other jurisdictions have also declined to impose upon a social host the duty to supervise their social guests. *See Hagar v. Griesse,* 29 Ohio App.3d 329, 505 N.E.2d 982 (1985); *Martin v. Shea,* 463 N.E.2d 1092 (Ind.1984); *Bunch v. Stanton,* 174 Ga.App. 233, 329 S.E.2d 538 (1985).

■ Additionally, the refusal of a requested charge is not reversible error if the charge is included in other instructions that are given to the jury. *Pyle by Pyle v. Morrison,* 716 S.W.2d 930, 937 (Tenn.App. 1986). Here, the substance of plaintiffs' special request was included in the charge to the jury. The trial judge's charge to the jury contained a charge which recognized the "duty to control the conduct of the guests" insisted upon by plaintiffs. The charge in pertinent part is as follows:

Now, this case more particularly involves a situation where the defendants were serving as hosts, as we sometimes call them, or social hosts to people who had been invited, either expressly or implied, to their property. Sometimes we call those people who come by invitation, invitees, as you would do, and I will refer sometimes to Mr. Wilkerson, the decedent, as an invitee in these instructions. With respect to this kind of situation, the Court instructs you that an owner or occupant of property does not guarantee the safety of persons who enter the

premises at the owner or occupant's invitation, but the owner or occupant does owe such invitees the duty to exercise reasonable care under all the attendant circumstances to protect the invitees from unreasonable risk of bodily injury created by the conditions of the premises or by activities occurring on the premises. This duty includes the duty to exercise reasonable control, reasonable care to control the conduct of other invitees when these following circumstances or conditions exist. First, that the owner or occupant is aware that invitees are engaging in or about to engage in activities that will expose other invitees to an unreasonable risk or harm, or when the owner or occupant should be, in the exercise of reasonable care, aware of such. Number two, the owner or occupant, in the exercise of reasonable care, is aware or should be aware of the necessity to attempt to control the conduct of other invitees. Number three, the owner or occupant, in the exercise of reasonable care, has a reasonable opportunity to take some action to control the other invitees. And number four, the owner or occupant has the ability to control the conduct of persons creating an unreasonable risk of harm to others.

Plaintiffs' special jury request number 2 primarily addressed the issue of concurrent negligence. The trial court's charge to the jury on the issue of concurrent negligence was as follows:

A single injury can be caused by the negligent acts or omissions of more than one person. If the conduct of two or more individuals combines to cause an injury, and if the causes of damage are effectively inseparable in the result, each person is responsible individually and jointly for having contributed concurrently to the resulting harm. Causes are considered to be concurrent if the forces set in motion by each cause are still operative at the moment of injury, and if the causes combine individually to produce the result. It is no defense that an individual who might be concurrently liable for a plaintiff's or decedent's injury

has not been joined as a party to this action.

This charge is in substance the charge requested by plaintiffs in their special requests. We find no error in the charge.

Plaintiffs' issues three and four are as follows:

3. Was the jury verdict inconsistent with the instructions of the Court and/or contrary to the evidence proven at the trial of this matter?

4. Was the jury verdict adequate to compensate the plaintiffs in compensatory damages for the pecuniary value of the decedent's life, and did the Trial Court err in overruling the plaintiffs' Motion for Additur or, in the Alternative, for a New Trial?

We discuss these issues together.

The jury, after being charged, returned a verdict as follows:

A. That defendant, Douglas L. Altizer, was not liable to the plaintiffs;

B. That defendant, Ruby Altizer, was not liable to the plaintiffs;

C. That defendant, Angela L. Petree was liable to the plaintiffs;

D. That plaintiffs' decedent, Gerald W. Wilkerson was guilty of remote contributory negligence;

E. That plaintiffs were entitled to recover the sum of Five Thousand Dollars ($5,000.00) from the defendant Angela L. Petree for the first class of damages (medical, funeral and burial expenses) provided by the wrongful death statute; and

F. The plaintiffs are entitled to recover nothing from the defendant Angela L. Petree for the second class of damages (pecuniary value of life of decedent) provided by the wrongful death statute.

■ In a wrongful death action, if liability is established, damages recoverable under Tennessee Code Annotated, Section 20–5–113 consist of two classes: 1) damages purely for injury to the deceased embraces damages for mental and physical suffering, loss of time and necessary expenses resulting to the deceased from personal injury, and 2) incidental damages suffered by the "next of kin" from the death. These incidental damages include the pecuniary value of the life of the deceased. *Davidson Benedict Co. v. Severson*, 109 Tenn. 572, 615–16, 72 S.W. 967, 977 (1903).

Here, the jury was charged regarding the measure of damages to which plaintiffs would be entitled to recover if they found that defendants were liable. The jury was also charged regarding proximate contributory negligence and remote contributory negligence.

■ The jury found that defendant Angela Petree was guilty of negligence that proximately caused plaintiffs' decedent's death, but that plaintiffs' decedent was guilty of remote contributory negligence. The finding of remote contributory negligence mandates that the jury must reduce the recovery which would otherwise be awarded to plaintiff in proportion to the plaintiff's contribution to the injuries. *Street v. Calvert*, 541 S.W.2d 576, 585 (Tenn.1976). Here, the pecuniary value of the life of plaintiffs' decedent was established to be within a range of $315,629.00 to $666,647.00. There was no countervailing evidence regarding the pecuniary value of plaintiffs' decedent's life.

■ Here, the jury's verdict finding that plaintiffs were entitled to recover nothing from defendant Angela Petree for the pecuniary value of the decedent's life was tantamount to a finding that plaintiffs' decedent was guilty of proximate contributory negligence which would bar recovery. The jury's verdict is inconsistent with the finding that plaintiffs' decedent was only guilty of remote contributory negligence.

This Court does not have the authority to grant an additur. Tenn.Code Ann. § 20–10–101. We review the action of the trial court in suggesting an additur pursuant to Tennessee Rule of Appellate Procedure 13(d). Tenn.Code Ann. 20–10–101(b)(2).

However, the statute does not provide any guidance when the trial court refuses to grant an additur. *See Foster v. Amcon International, Inc.*, 621 S.W.2d 142, 146 (Tenn.1981).

Here, the jury's verdict was not within the "range of reasonableness." Therefore, the trial court should have suggested an additur or granted a new trial. *Foster v. Amcon International, Inc.*, 621 S.W.2d 142 (Tenn.1981). We are of the opinion that the trial court abused its discretion in failing to suggest an additur or, in the alternative, failing to grant a new trial.

 The appellees have presented one issue: The trial court erred in failing to dismiss plaintiffs' complaint pursuant to the Tennessee Recreational Use Act (the Act), Tennessee Code Annotated, Section 70–7–101, *et seq.*

They insist that defendants/appellees were under no duty to "keep their premises safe or to warn [plaintiffs' decedent] of 'hazardous activities' on their premises even if they otherwise owed such a duty under Tennessee law because [plaintiffs' decedent] was participating in a 'water sport' on the premises at the time of his death."

On motion for summary judgment the trial court denied appellees' motion to dismiss specifically holding that the Act "is inapplicable in this cause."

The Tennessee Recreational Use Act primarily addresses a landowner's duty to keep the land or premises safe or to warn of danger, hazardous conditions or activities on the land. Tenn.Code Ann. § 70–7–102. The Act, in essence, protects landowners from liability resulting from the use of the landowner's land by others for recreational activities such as hunting, fishing, camping, white-water rafting, etc.

The Act is found in Title 70 (Wildlife Resources) and is intended to apply to sportsmen who commonly use the land of another for recreation, such as hunting and fishing.

There is nothing in the record in the complaint, the evidence, or argument of counsel which tends to show that plaintiffs' complaint is based upon unsafe or hazardous conditions on defendants' land. Rather the claim is founded upon the duty of reasonable care owed to a social guest/invitee by a social host/landowner.

We agree with the trial court that the Act is not applicable here. The issue is the duty owed to a social guest by a social host and the host's liability for the acts of third parties. The condition of the premises where the accident occurred is not at issue. This issue is without merit.

We are therefore of the opinion that under the circumstances the verdict was inadequate to compensate the plaintiffs for the pecuniary value of the life of plaintiffs' decedent and that the trial court abused its discretion in failing to suggest an additur or, in the alternative, failing to grant a new trial. We therefore grant the plaintiffs a new trial as to the defendant Angela L. Petree. In all other respects, the judgment of the trial court is affirmed with costs assessed to the defendant Angela L. Petree and the cause remanded to the trial court for further proceedings in conformity with this opinion, for the collection of costs, and for any other necessary proceedings.

SANDERS and McMURRAY, JJ., concur.

ORDER ON PETITION TO REHEAR

Appellee Angela L. Petree has filed a most respectful petition to rehear which this Court has considered and finds to be without merit.

It is therefore ORDERED that the petition to rehear be and the same is denied at the cost of defendant-appellee, Angela L. Petree.