IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON

## JOHN PITNER, v. FAYETTE COUNTY, TENNESSEE,

**Appeal from the Chancery Court for Fayette County**
**No. 11079   Wil V. Doran, Chancellor by Designation**

_____

**No. W1999-01217-COA-R3-CV - Decided May 4, 2000**

_____

This appeal results from the trial court's dismissal of Plaintiff John Pitner's cause of action against Defendant Fayette County, Tennessee ("County") pursuant to Rule 41.02(2) of the Tennessee Rules of Civil Procedure. The trial court ruled that Mr. Pitner, the former Director of Planning and Development for the County, failed to prove that the County was contractually obligated to pay overtime to him and that Mr. Pitner further failed to prove damages. We affirm on the basis that Mr. Pitner failed to prove the existence of a contract.

**Rule 3 Appeal as of Right; Judgment of the Chancery Court Affirmed**

FARMER, J., delivered the opinion of the court, in which CRAWFORD, P.J., W.S., and HIGHERS, J., joined.

Michael W. Whitaker, Covington, Tennessee, for the appellant, John Pitner.

Joel Porter and Todd A. Rose, Paris, Tennessee, for the appellee, Fayette County, Tennessee.

**OPINION**

In November of 1984, Mr. Pitner became employed by the County as the Director of its Office of Planning and Development. As the Director of Planning and Development, Mr. Pitner was required to attend a variety of meetings, many of which took place outside of normal business hours.[1] William David Smith, who formerly served as the Fayette County Executive, wrote a letter to Mr. Pitner in June of 1987 stating in pertinent part as follows:

_____

[1]In January of 1994, Mr. Pitner stated on a written questionnaire that he attends at least four or five night and weekend meetings per month and works "extensive uncompensated overtime." Additionally, Mr. Pitner testified that he worked in the office on the weekends and worked in the evenings at his home and at several local "watering holes."

John, I am concerned that you may not be adhering to any established work schedule like other county employees are expected to. It appears that you are on a "flex-time" schedule; you work hours most convenient to you.

. . . .

John, I do not think you should liken yourself to an elected county official, who is able to set his own work schedule. I realize that your job requires night time meetings and other odd hours, and I expect you to take compensatory time off periodically to make up for it. As fiscal agent, I might approve special work hour changes, if you request such in advance.

In July of 1994, Mr. Pitner sent a memorandum to Mr. Smith demanding that his salary be increased so that it was equal to the salary of the Director of the Fayette County Election Commission. Mr. Pitner further stated in the memorandum that, if his salary was not so increased, he would resign and demand payment of accrued retirement and uncompensated overtime of at least $8,000.00. The County responded to this memorandum by raising Mr. Pitner's salary to an amount equal to the salary of the Election Commission Director. In August of 1994, Mr. Pitner submitted a letter of resignation to Mr. Smith stating in pertinent part as follows:

I herewith resign as Fayette County Planning Director.

. . . .

There remains the matter of my very considerable uncompensated overtime in the service of Fayette County, which amounts to at least one-and-a-half (1½) years since my beginning employment date of November 26, 1984, most of which time I can document. In settlement of this matter, I will waive and relinquish any further claim upon Fayette County in return for the county's continued payment of my full present salary and benefits through April 30, 1995. I make this settlement offer having full confidence in the assessment of my attorney, Mike Whitaker, based on the partial records and documents that I already have provided him, that a much more lucrative result would obtain should I elect to litigate for all the overtime pay due me.

Mr. Smith subsequently sent a memorandum to Mr. Pitner acknowledging the receipt of his letter of resignation and requesting that Mr. Pitner document all of the hours of overtime for which he was seeking compensation. Mr. Pitner responded with a memorandum to Mr. Smith purporting to document a total of 910 hours of uncompensated overtime.[2] Mr. Smith subsequently left his position

---

[2]At trial, Mr. Pitner requested compensation for 6,155.28 rather than 910 hours of uncompensated overtime. Included in the 6,155.28 hours of compensation requested by Mr. Pitner is 91.5 days of accrued sick leave. Mr. Pitner admitted, however, that the County had a policy against paying for unused sick time, that no one ever represented to him that he would be paid for

as the County's Executive and was succeeded by Jim Voss, who did not respond to Mr. Pitner's settlement offer.

In December of 1994, Mr. Pitner filed a complaint against the County alleging that the County had breached his employment contract and that the County had deprived him of equal protection of law in violation of Chapter 42, Sections 1983 and 1988 of the United States Code.[3] In its amended answer to this complaint, the County raised a number of defenses, including that Mr. Pitner's claim is barred by estoppel insofar as it is inconsistent with signed reports submitted to Mr. Smith by Mr. Pitner which purport to document the number of hours that he worked during particular periods of time. The matter came to be heard on February 9 and 10, 1999. At the conclusion of Mr. Pitner's proof, the County moved for the dismissal of Mr. Pitner's claim pursuant to Rule 41.02(2) of the Tennessee Rules of Civil Procedure.[4] The trial court granted the motion, stating as follows:

> From a consideration of all of the testimony and proof in the case, it is the opinion of the court that the plaintiff, Mr. Pitner, has failed to prove by a preponderance of the evidence, that there was a contract for compensation, or to allow him to accumulate compensation over a period of years, for purposes of monetary recompense. Even if there was a contract in that regard, from all of the proof in this case, the compensable time could not be determined by this court without guess, surmise, or conjecture, and that is not the province of this court to do.

---

his unused sick time, and that, during his employment, he never expected to be paid for his unused sick time.

[3]At the taking of Mr. Pitner's deposition, counsel for Mr. Pitner indicated that Mr. Pitner was no longer alleging a violation of equal protection. Accordingly, this theory of recovery was not pursued at trial or on appeal.

[4]Rule 41.02(2) provides as follows:

> After the plaintiff, in an action tried by the court without a jury, has completed the presentation of plaintiff's evidence, the defendant, without waiving the right to offer evidence in the event the motion is not granted, may move for dismissal on the ground that upon the facts and the law the plaintiff has shown no right to relief. The court shall reserve ruling until all parties alleging fault against any other party have presented their respective proof-in-chief. The court as trier of the facts may then determine them and render judgment against the plaintiff or may decline to render any judgment until the close of all the evidence; in the event judgment is rendered at the close of plaintiff's evidence, the court shall make findings of fact if requested in writing within three days after the announcement of the court's decision.

T.R.C.P. 41.02(2).

I have given great weight to these time sheets, because I have to. There is a principle in equity called equitable estoppel: You are supposed to say what is right at the proper time to say it, and not later on, say it is all wrong. I have said it before, but that is not what the case was. I have no doubt in my mind that Mr. Pitner probably worked quite a bit of overtime, but there is not any – I don't think he ever contemplated that he would get paid for it. That is why he did that, maybe because he knew there was no such thing as being paid for it. You just have to take your time off, as the testimony here is, from Ms. Pullium and others, if you worked overtime, you took time off. And apparently he couldn't do that. That is unfortunate, but that is something he should have dealt with at the time, and not wait until it was time for him to quit, ten years later, and then deal with it.

For all of these reasons, it is the opinion of the Court that the plaintiff's prayer must fail, and there should be a judgment in favor of defendant.

Consistent with this ruling, the trial court subsequently entered an order dismissing Mr. Pitner's complaint with prejudice. This appeal by Mr. Pitner followed.

The issues raised on appeal, as stated by Mr. Pitner, are as follows:

I.      Was there an express or implied contract between plaintiff and Fayette County for the plaintiff to accumulate compensatory time for hours worked beyond the county employees['] regular work week[?]

II.     If a contract existed could the compensatory time be determined without guess, surmise or conjecture?

III.    Whether the county was entitled to an estoppel when it had actual notice of plaintiff's extraordinary hours and showed no detrimental reliance on his failure to file monthly time sheets[?]

IV.     Whether the plaintiff should have been permitted to treat the former county executive as an adverse party or witness identified with defendant[?]

When, as in the case at bar, the trial court has dismissed the plaintiff's claim pursuant to Rule 41.02(2), our review of this ruling is *de novo* on the record, with a presumption of correctness attaching to the trial court's findings of fact. *See Nold v. Selmer Bank & Trust Co.*, 558 S.W.2d 442, 444 (Tenn. Ct. App. 1977); T.R.A.P. 13(d). Accordingly, we may not reverse the trial court's findings of fact unless they are contrary to the preponderance of the evidence. *See id.*

We must first consider whether there was a contract between the parties establishing a right on the part of Mr. Pitner to payment for accrued compensatory time that remained unused at the end

of his employment with the County. Mr. Pitner contends that there was an express contract between the parties regarding the matter of compensatory time, as evidenced by a June 1987 letter wherein Mr. Smith stated to Mr. Pitner as follows: "I realize that your job requires night time meetings and other odd hours, and I expect you to take compensatory time off periodically to make up for it." Consistent with the policy evidenced by this statement, Mr. Pitner testified (1) that he was told by Mr. Smith prior to his employment that the County did not pay overtime but that he would be able to take compensatory time, (2) that, approximately midway through his employment with the County, he discovered that the County's policy was that compensatory time should be taken in the same month in which it was accrued, (3) that he did, in fact, periodically take compensatory time, (4) that he never believed that he would be paid for all of the accrued overtime that he was not able to take as compensatory time, and (5) that he hoped to receive some sort of settlement regarding his unused compensatory time at the end of his employment with the County. Thus, Mr. Pitner's own testimony reveals that, although both parties agreed that Mr. Pitner was entitled to take compensatory time, there was no agreement between the parties regarding payment for compensatory time that remained unused at the end of Mr. Pitner's employment. We therefore conclude that there is no express contract between the parties entitling Mr. Pitner to compensation for the hours of overtime that he did not take as compensatory time.[5]

Mr. Pitner also contends that there is an implied contract between the parties regarding the matter of compensatory time. First, Mr. Pitner suggests that, because he rendered services to the County with the County's knowledge, the County impliedly promised to compensate him for these services. It is undisputed, however, that the County did pay a salary to Mr. Pitner and had a policy allowing Mr. Pitner to take off compensatory time to make up for his hours of overtime. Thus, the County did compensate or offer to compensate Mr. Pitner for his services. Additionally, Mr. Pitner suggests that, because the County paid some other employees for their accrued compensatory and/or sick time upon leaving County service,[6] the County impliedly promised to also pay him for his accrued compensatory time. As stated above, however, Mr. Pitner understood at the time he accepted the County's offer of employment that the County did not pay overtime and that employees were expected to take off compensatory time to make up for their hours of overtime. Additionally,

_____

[5]Mr. Pitner complains on appeal that, as a result of the quantity of work and the lack of staff in his office, he was simply unable to take off enough compensatory time to make up for his many hours of overtime. In a June 1987 letter to Mr. Pitner, Mr. Smith stated that he might approve special work hour changes if Mr. Pitner requested such changes in advance. Mr. Pitner did not request any such hour changes. Additionally, Mr. Pitner testified that he was never turned down by the County when he requested additional staff to help with the increasing workload of his office. There is no evidence in the record suggesting that Mr. Pitner attempted to deal with his inability to take off a sufficient amount of compensatory time by requesting additional staff. Given Mr. Pitner's acquiescence with regard to this problem, we reject Mr. Pitner's argument that he was unable to follow the County's policy regarding the taking of compensatory time.

[6]These employees include Larry Martin, Paula Dennison, Mary Louise Murphy, Mike McNeil, Mary Wright, Rita Thompson, and Ricky Hoskins.

-5-

Mr. Pitner testified that he never believed that he would be paid for all of the unused compensatory time that remained at the end of his employment but hoped to receive a settlement from the County to compensate him for these hours.  Finally, Mr. Pitner admitted that he did not become aware that other employees had been paid for their unused compensatory and/or sick time until after leaving his employment with the County.  Under such circumstances, the County's payment to a few employees for unused compensatory time did not create an implied contract between the parties entitling Mr. Pitner to receive payment for the accrued compensatory time that remained unused at the end of his employment.

The trial court in the instant case refused to allow Mr. Pitner to use leading questions during his direct examination of Mr. Smith.  On appeal, Mr. Pitner argues that he should have been allowed to ask Mr. Smith leading questions pursuant to Rule 611(d) of the Tennessee Rules of Evidence, which provides as follows:

> **Calling Adverse Party.**  When a party in a civil action calls an adverse party (or an officer, director, or managing agent of a public or private corporation or of a partnership, association, or individual proprietorship which is an adverse party), interrogation on direct examination may be by leading questions.  The scope of cross-examination under this paragraph shall be limited to the subject matter of direct examination, and cross-examination may be by leading questions.

T.R.E. 611(d).  In general, the question of whether to allow a party to lead a witness is left within the sound discretion of the trial court.  *See Wilkerson v. Altizer*, 845 S.W.2d 744, 747 (Tenn. Ct. App. 1992).  Mr. Smith served as the County's Executive from 1978 to 1994 and thus was formerly an elected official of the County.[7]  Rule 611(d) specifically applies to "an officer, director, or managing agent of a public or private corporation or of a partnership, association or individual proprietorship" but does not specifically apply to an officer, director, or managing agent of a municipality such as the County.[8]  We therefore think that Rule 611(d) is inapplicable to the case at bar.  Accordingly, we conclude that the trial court did not abuse its discretion or otherwise err in refusing to allow Mr. Pitner to use leading questions during his direct examination of Mr. Smith.

Assuming, *arguendo*, that the trial court was required by Rule 611(d) to allow the use of leading questions during Mr. Pitner's direct examination of Mr. Smith, we next consider whether the court's ruling was harmless error.  Mr. Pitner argues on appeal that "[t]he failure of the Court to permit the Plaintiff [to ask leading questions] was prejudicial and could not be deemed harmless error since it totally impacted Plaintiff's presentation of proof."  Immediately following the trial

---

[7]Mr. Smith left this position and was replaced by Jim Voss just thirteen days prior to the submission of Mr. Pitner's letter of resignation.

[8]Mr. Pitner concedes in the brief he submitted to this Court that "TRE 611(d) does not exactly fit the situation."

court's ruling regarding this matter, however, counsel for Mr. Pitner stated that "[i]t is not worth arguing about, because I think I'm through, just about." Mr. Pitner has not demonstrated any way in which his inability to ask leading questions prevented him from eliciting relevant testimony from Mr. Smith and we are not satisfied that the court's ruling "totally impacted Plaintiff's presentation of proof." Thus, we conclude that any error on the part of the trial court with respect to this matter was harmless.

Given our conclusions that there was no contract between the parties entitling Mr. Pitner to payment for unused compensatory time and that the trial court did not err in refusing to allow counsel for Mr. Pitner to examine Mr. Smith using leading questions, we find it unnecessary to address the remaining issues raised on appeal. Thus, we preclude any discussion regarding whether Mr. Pitner adequately proved his damages or whether Mr. Pitner's claim is barred under the theory of equitable estoppel.

Based on the foregoing, the trial court's dismissal of Mr. Pitner's claim against the County is affirmed. The costs of this appeal are assessed against Mr. Pitner, for which execution may issue if necessary.