IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
AUGUST 6, 2002 Session

## TIMOTHY DOUGLAS GAITHER, ET AL. v. JESSIE R. BUSH
### and
## ANGELA FAYE WHITE v. TIMOTHY DOUGLAS GAITHER

Direct Appeal from the Circuit Court for Coffee County
No. 29, 898; The Honorable J. B. Cox, Judge

———————————

No. M2001-01952-COA-R3-CV - Filed January 16, 2003

———————————

This is a case involving the division of wrongful death proceeds between the divorced parents of the deceased. The deceased was eighteen, healthy, and about to enter the military. The plaintiff mother asked for an equal division of the proceeds of a wrongful death settlement entered by the father. Also included in the settlement was the father's action, individually, for his emotional trauma suffered while witnessing his son's death. A jury was asked to divide the settlement proceeds between the parties. The jury found that all of the damages for the pecuniary value of the son's life were attributable to the mother and father, and none were attributable to the son. For the following reasons, we affirm.

**Tenn. R. App. P. 3; Appeal as of Right; Judgment of the Circuit Court Affirmed**

ALAN E. HIGHERS, J., delivered the opinion of the court, in which DAVID R. FARMER, J., and HOLLY KIRBY LILLARD, J., joined.

Charles Galbreath, Nashville, TN, for Appellant

Randall W. Morrison, Tullahoma, TN, for Appellee

**OPINION**

**Facts and Procedural History**

This is a case concerning the division of the proceeds of a wrongful death settlement between the next of kin, the divorced parents, of the deceased. On June 5, 1999, eighteen-year-old Timothy Shawn Gaither ("the deceased") was killed in an accident when his motorcycle was struck by a car driven by Jessie R. Bush ("Mr. Bush"). The Appellee, the deceased's father, Timothy Douglas Gaither ("Mr. Gaither"), witnessed his son's death at the scene of the accident. Mr. Gaither, individually and as administrator of the deceased's estate, filed a wrongful death and emotional

distress claim against Mr. Bush. Thirteen months later, Mr. Gaither settled with Mr. Bush for $117,000.00. On November 1, 2000, the order of settlement was entered. Mr. Gaither states that he informed the Appellant, the deceased's mother, Angela Faye White ("Ms. White") of the claim six months after it was filed. Ms. White asserts that Mr. Gaither failed to inform her of the claim until after the settlement. After the settlement was reached, Mr. Gaither sent Ms. White a letter asking her to waive her rights to her portion of the settlement.

The settlement proceeds were initially deposited with the probate court. Mr. Gaither made a claim for reimbursement of funeral and burial expenses and approval of a one-third of the settlement amount for attorney's fee and out-of-pocket expenses incurred by the attorney. Ms. White disputed that Mr. Gaither was entitled to reimbursement of funeral and burial expenses and disputed payment of the one-third attorney's fee and out-of-pocket expenses from her portion of the settlement. Ms. White argued that the settlement proceeds should be removed from the estate. The settlement proceeds were removed from the estate and deposited in the Coffee County Circuit Court Clerk's registry. Following the removal of the settlement proceeds from the estate, the estate was deemed insolvent and was closed.

Prior to the closure of the estate, Ms. White filed a complaint against Mr. Gaither. The complaint alleged that Mr. Gaither wrongfully withheld the portion of the settlement proceeds to which Ms. White was entitled without deduction of the reimbursement of funeral and burial expenses, without deduction of the one-third attorney's fee and out-of-pocket expenses, and without deduction for the separate damages of severe emotional distress as claimed by Mr. Gaither. Mr. Gaither filed an answer alleging that the claim filed against Mr. Bush sought damages for emotional distress and that he should be entitled to receive damages for emotional distress before any division of the wrongful death proceeds were made.

On pre-trial motions, the trial court denied Mr. Gaither's claim for reimbursement of the funeral and burial expenses but did approve the one-third attorney's fee. On May 29, 2001, a jury trial was held on the issue of the proper distribution of the wrongful death proceeds. At the trial Ms. White, the plaintiff, presented evidence that she had a renewed an ongoing relationship with her son after a period of estrangement. She presented evidence that the deceased had been living with his paternal grandparents for the vast majority of his life. She further testified that her son was eighteen years old, able bodied, and was killed days before his scheduled entry into the military. Ms. White also testified to the extent of her emotional injury stemming from her son's death. Ms. White did not present any expert proof nor did she ask the judge to take judicial notice of any value to be assigned to the life of the deceased. She also did not present any evidence regarding the projected life span or projected income of the deceased. Ms. White argued that all of the proceeds should be evenly divided between her and Mr. Gaither. Mr. Gaither provided evidence that he lived near the deceased and had a relationship with him. He also testified about witnessing the accident, and being present when his son died. Mr. Gaither testified to the emotional injuries he had received as a result of witnessing the accident and the death of his son. Like Ms. White, Mr. Gaither put on no proof as to the pecuniary value of his son's life. The jury awarded Mr. Gaither $67,751.98 and awarded Ms.

White $3,556.76 of the remaining settlement proceeds. Ms. White timely filed an appeal to this Court.

## Issues Presented For Review

Ms. White, in her brief, presents six issues for our review. A review of the record, however, shows that only one of these issues was presented to the trial court in Ms. White's Motion for New Trial. "It has long been the rule in this state that in order to preserve errors for appeal, the appellant must first bring the alleged errors to the attention of the trial court in a motion for a new trial." *Fahey v. Eldridge*, 46 S.W.3d 138, 141 (Tenn. 2001). This rule has been embodied in Tennessee Rule of Appellate Procedure 3(e). *Id.* at 142. This rule provides in pertinent part:

> [I]n all cases tried by a jury, no issue presented for review shall be predicated upon error in the admission or exclusion of evidence, jury instructions granted or refused, misconduct of jurors, parties or counsel, or other action committed or occurring during the trial of the case, or other ground upon which a new trial is sought, unless the same was specifically stated in a motion for a new trial; otherwise such issues will be treated as waived.

The text of Ms. White's "MOTION FOR NEW TRIAL OR AMENDMENT OF THE JUDGMENT," in its entirety, reads as follows:

> Comes the Plaintiff and Counter-Defendant, Angela Faye White, by counsel and moves the Court to grant a new trial or correct the awards made, because the verdict of the jury was against the weight of the evidence, it having been stipulated and proved that the death of Timothy Shawn Gaither was the result of and caused by the negligence of Jesse Bush, and that the innocent decedent had suffered damages based on the pecuniary value of his life upon consideration, among other losses, of his expectancy of life, his age, condition of health, and capacity for earning money, he having recently accepted employment by the United States, so that there was no basis in fact supported by law for the jury to find from the evidence that no damages were attributable to his death. It is accordingly moved that the Trial Judge order such remittitures and additurs that will be acceptable to the parties or grant a new trial.

Thus Ms. White's issue stated as "[t]he weight of the evidence is against the verdict of the jury who found that the life of the eighteen-year-old deceased, in good health, beloved by his family and employed by the United States in the military, had no value" is properly before this Court. Ms. White's other issues pertaining to jury instructions, orders of the trial court, and Mr. White's attorney's failure "to protect appellant's rights as the law required" are not properly before this Court because they were not presented in Ms. White's motion for a new trial, and, thus, are waived under T.R.A.P. 3(e).

## Standard of Review

Our standard of review as to findings of fact by a jury in a civil action is limited to determining whether there is any material evidence to support the verdict. TENN. R. APP. P. 13(d). Appellate courts do not determine the credibility of witnesses or weigh evidence on appeal from a jury verdict. *Pullen v. Textron, Inc.*, 845 S.W.2d 777, 780 (Tenn. Ct. App. 1992) (citing *Crabtree Masonry Co. v. C & R Constr., Inc.*, 575 S.W.2d 4, 5 (Tenn. 1978)). We will "take the strongest possible view of the evidence in favor of the prevailing party and discard evidence to the contrary." *Hickman v. Jordan*, 87 S.W.3d 496, 498 (Tenn. Ct. App. 2002). A judgment based on a jury verdict will not be disturbed on appeal where the record contains material evidence supporting that verdict. *Reynolds v. Ozark Motor Lines, Inc.*, 887 S.W.2d 822, 823 (Tenn. 1994).

## Law and Analysis

Under Tennessee Code Annotated § 20-5-114, the wrongful death statute, there are two types of damages that may be recovered. *Rothstein v. Orange Grove Center, Inc.*, 60 S.W.3d 807, 814 (Tenn. 2001). The first type are those suffered by the deceased from the time of injury to the time of death. *Id.* The second type are those suffered by the survivors of the deceased. *Id.* Included in this second type of damages is the pecuniary value of the decedent's life. *Id.* The pecuniary value of the decedent's life is based on factors such as the age and life expectancy of the deceased, ability to work and earning capacity, and personal habits such as sobriety or industry. *Jordan v. Baptist Three Rivers Hosp.*, 984 S.W.2d 593, 600 (Tenn. 1999). In *Jordan v. Baptist Three Rivers Hospital*, the Tennessee Supreme Court expanded the scope of "pecuniary value" to include consortium damages which that Court defined as including losses by family members of the deceased's "attention, guidance, care, protection, training, companionship, cooperation, affection, love, and in the case of a spouse, sexual relations." *Id.* at 602. In a later decision, *Hancock v. Chattanooga-Hamilton County City Hospital*, our Supreme Court extended its holding in *Jordan* to include the loss of consortium suffered by parents from the death of their adult child. *Hancock v. Chattanooga-Hamilton County City Hosp.*, 54 S.W.3d 234, 236 (Tenn. 2001). The determination of the pecuniary value of the life of the deceased is left to the sound discretion of the trier of fact. *Knowles v. State*, 49 S.W.3d 330, 339 (Tenn. Ct. App. 2001).

In the case before us, Mr. White brought an action for the wrongful death of his adult son and for the emotional injuries Mr. White suffered from witnessing his son's death. He settled the case for $117,000. No distinction was made in the settlement as to how much of this sum went for the wrongful death action and how much went for Mr. White's emotional injuries. Ms. White brought an action to divide the damages equally between the parents. After attorney's fees were deducted by the trial court, a jury was asked to divide the remaining funds between Mr. and Ms. White.

No transcript was created of the hearing that took place. The parties could not agree on what transpired at the hearing, so the trial court, pursuant to Tennessee Rule of Appellate Procedure 24 (e), by order, composed a "Statement of the Evidence." This Statement reflects that Ms. White put on proof as to her renewed and ongoing relationship with her son, and her emotional trauma

following his death. Ms. White also established that her son was eighteen, able-bodied, and about to enter the military. The trial court, in its Statement, notes that at this point "Plaintiff rested and presented no other proof for consideration of the jury as to the value of the life of the child." Ms. White did not put on any expert proof about the value of her son's life, nor did she put on any proof of her son's life span or income. Mr. White likewise testified about his relationship with his son and about the emotional trauma of witnessing his son's death. Mr. White also did not put on any proof regarding the pecuniary value of his son's life.

The jury was instructed to consider the amount of damages "that are attributable to the loss of life of the child outside any individual claim of the parties for damages." The jury was then given two classes of damages to consider. First, "those damages sustained immediately by the injured party" including mental and physical suffering, medical expenses, and loss of earning capacity from the time of injury to that of death. Second, the jury was instructed as to the "pecuniary value" of the deceased life and asked to consider the age, health, life expectancy, earning capacity, and personal habits such as sobriety and industry of the deceased. The jury was also instructed that the parents could recover for their individual injuries resulting from their loss of consortium and from their emotional injuries.

On its verdict form the jury was presented with two options to determine the "amount of damages attributable to the death of the deceased Timothy Shawn Gaither for his loss of life": "a. $0 in that all of the damages are attributable to the individual parties to this lawsuit" or "b. $_____." The jury chose the first option and determined that all of the damages were attributable to the individual parties. The jury then awarded Ms. White five percent of the total damages for her loss and ninety-five percent of the total damages to Mr. White.

Ms. White contends that the jury was in error to find that the life of the deceased had "no value" and points to *Wilkerson v. Altizer*, 845 S.W.2d 744 (Tenn. 1992), for support. The *Wilkerson* case, however, must be distinguished from the present case. In *Wilkerson*, the jury's finding of no pecuniary value for the life of the deceased in the face of proof that the life of the deceased was worth between $315,629.00 and $666,647.00 was overturned. *Id.* at 749. There was no such proof in the present case as to the worth of the life of the deceased.

In her brief, Ms. White argues that even where is no proof of the value of a life, there is a presumption of value and at least nominal damages should be awarded. Ms. White cites no Tennessee case law for this proposition, though she did provide a partial citation to an American Law Reports annotation.[1] The relevant Tennessee cases cited in that annotation, *Jenkins v. Hankins*, 41 S.W. 1028 (Tenn. 1896), and *Smythe v. Easy Quick Stores, Inc.*, 754 S.W.2d 57 (Tenn. Ct. App. 1988), approved awards of nominal damages to the wrongful death plaintiffs where the jury found the deceased caused an altercation that precipitated his death. These cases are factually

---

[1] C.C. Marvel, Annotation, *Recovery of Nominal Damages in a Wrongful Death Action*, 69 A.L.R.2d 628 (1960).

distinguishable from the case at hand. There is nothing in these cases or other Tennessee cases found in our research that demands nominal damages in the present case.

It has been said that "[t]he life of every person has value. The value is not, however, always economically quantifiable." *Mclanahan v. Clayton*, No. 01-A-01-9308-CV-00371, 1994 Tenn. App. LEXIS 309, at *11 (Tenn. Ct. App. June 10, 1994). In that case, the trial court limited the recovery of the surviving children to the funeral and medical expenses of their deceased parents. *Id.* at *4. The surviving children appealed and argued that their "parents' lives have some intrinsic economic worth" for which damages should be awarded. *Id.* The surviving children had put on proof of their parents life expectancy, health, and personal habits, but not of income or any other economic services provided to the children. *Id.* The trial court found this proof insufficient to allow for a monetary recovery. *Id.* The Court of Appeals, Middle Section stated that the plaintiff must put on some proof of age, life expectancy, health, personal habits, and earning capacity in order to get the issue of damages to the jury. *Id.* (citing *Tennessee Central Railway Co. v. Dial*, 65 S.W.2d 610, 615 (Tenn. Ct. App. 1933) ("evidence of the deceased's state of health, his life expectancy, and his earning capacity is necessary in order to enable the jury and court to arrive at a proper conclusion")). The Middle Section then affirmed the trial court's decision stating "[w]hile we have no doubt of Mr. and Mrs. McClanahan's inestimable value to their family, we concur with the trial court's determination that their childrens'[sic] proof concerning the "pecuniary value" of their lives insufficient to warrant a monetary recovery under Tenn. Code Ann. § 20-5-113." *Id.*

On the narrow issue before us, whether it is possible for the jury to assign an amount of zero for the pecuniary value of the life of the deceased where the extent of the proof is that he was eighteen, healthy, and about to enter the military, we find the *McClanahan* case to be controlling. We find that there was not enough proof before the jury to enable them to reach any other decision. As noted above, the assignment of a pecuniary value to the deceased's life is left to the "sound discretion" of the jury and we will not disturb the verdict of this jury. We do not hold that the deceased's life had no pecuniary value, but that the jury had no proof upon which to assign such a value.

### Conclusion

For the foregoing reasons, we affirm the verdict of the jury in this case. Costs are taxed to the appellant, Angela Faye White, and her surety, for which execution may issue if necessary.

_____
ALAN E. HIGHERS, JUDGE