## HATCHER v. CANTRELL et al.

Middle Section. July 29, 1933.

Petition for Certiorari denied by Supreme Court, December 15, 1933.

Walker & Hooker, of Nashville, for plaintiff in error.

Lee Douglas and William Howard Ewing, both of Nashville, for defendants in error.

DeWITT, J. On July 4, 1930, Harry S. Hatcher sustained personal injuries from being struck by a Buick Sedan automobile owned

by Harris Cantrell, while being operated by his daughter, Miss Kittie Cantrell. Hatcher brought this action against Cantrell and his daughter to recover damages. Upon a trial to a jury the circuit judge sustained the motion of the defendants for peremptory instructions, made at the close of the evidence for the plaintiff, and dismissed the suit. The plaintiff's sole contention in this court is that the case should have been submitted to the jury:

First, because under the circumstances of the accident the plaintiff was not in the status of a mere volunteer upon premises of Cantrell and assisting, without express license or invitation, in rescuing the automobile from danger from a nearby fire, as held by the circuit judge.

Second, because, even if the plaintiff was such volunteer, the question whether or not the defendants were guilty of gross negligence and therefore liable to the plaintiff, was one for determination by the jury.

Hatcher and Cantrell resided two doors apart on Woodland street in the city of Nashville. Cantrell owned the automobile and it was used by his daughter with his consent. It was kept in a frame garage opening on an alley running east and west along the rear of Cantrell's premises. The alley was twenty-one feet seven inches wide. The garage had space for three cars and the middle part was used for the storage of Cantrell's car. It had double doors which opened on the alley. This section was separated from the adjoining section on each side by two horizontal timbers, about two by four inches in size, one of them being about eighteen inches above the ground and the other about four or five feet above it. The only evidence of the dimensions of this section of the garage is the statement of the plaintiff on cross-examination that it was "probably about" sixteen feet long and eight feet wide; and he said that the automobile was about fifteen and one-half feet long and six feet wide, and that it had on its rear a tank which would hold about fifteen to twenty gallons of gasoline.

Immediately across the alley from this garage was a small frame house occupied by servants. The partial burning of this house led to the misfortune which the plaintiff suffered.

While the plaintiff was eating his midday meal in his home, he was informed that there was a fire in the alley. He arose quickly, started toward the fire, called Miss Cantrell, and told her that they had better get her car out of the garage. He testified: "She got the keys and we went in and proceeded to get the car out." He was accompanied, or immediately followed, by his wife, Mrs. Hatcher. They arrived at the garage at about the same time. All three of them went into the garage. Mrs. Hatcher testified: "We were just bent on getting it out." She was asked and answered:

"Q. Weren't you calling to Miss Cantrell all the time, 'hurry, hurry, hurry, get your car out?'' A. Well, we went to get it out before the fire come down and got there. That was our reason for hurrying.''

She said that she was not greatly excited; that the garage was not afire; and that there was not then any danger.

The fire was then burning under the porch of the servant's house directly across the alley. Smoke was coming from under the porch. The porch was consumed and the front wall of the servant's house was charred by the fire. The garage was not ignited. Mrs. Hatcher testified: "There was a lot of people hallooing at the time." The only conclusion inferable is that the danger to the garage and the automobile was manifest, and that Mr. and Mrs. Hatcher and Miss Cantrell were hurrying to rescue the car from the danger. Miss Cantrell had with her the keys to the car. The door to the garage was quickly unlocked. All three persons entered the garage. In their hurry they could not get open the door of the car by unlocking it. At Mr. Hatcher's suggestion Mrs. Hatcher went into the alley, picked up a brickbat, returned and with it smashed the glass to the right-hand door of the car. Mr. Hatcher saw Miss Cantrell, after the door was opened, get in the car, slide across the seat, and get in behind the steering wheel to start the motor. Mrs. Hatcher went back into the alley, stood at the east door of the garage, and held it open, as Miss Cantrell was about to move the car backward into the alley, as it was the only way to get it out.

Mr. and Mrs. Hatcher testified that he walked around the front of the car and stood between the car, opposite the front seat, and the horizontal pieces of timber. He testified that he did this because he was trying to tell Miss Cantrell how to get the car started. The window by Miss Cantrell on her left was closed. The car did not start at once. There is no evidence that Miss Cantrell heard what he may have said to her. The starter was making a noise. He admitted that he knew that the only possible way to get the car out was by backing it. He stated that he was looking both at Miss Cantrell and at the door. He was a large man, over six feet tall, and weighed 210 pounds. The space in which he stood was very small.

As to what then occurred, Mr. Hatcher testified that Miss Cantrell suddenly turned the steering wheel to her right, turning the front wheels to her left toward him. started backing the car out toward the east, struck him, threw him down, and dragged him to the door; that the wheel ran over his leg and broke it; that he hit the door of the garage and it was knocked down on him; that the car went on out into the alley and did not stop for some distance. He said that when the car started it came back so fast that he had no time to get out of the way; and that Miss Cantrell gave him no warning to stand back out of the way, that she was not going to back straight out of

the garage but was going to cut to her left. He said that the car started just when the motor began to operate, and that the car come about as fast as a car could be run backward. He admitted that on a former trial he testified that Miss Cantrell, in trying to back the car out eastwardly, did what he would have done had he been in her situation. It is undisputed that by backing out straight, she would have gone directly toward the fire, with the gas tank ahead. It is manifest that had Mr. Hatcher been standing at the west door on the alley, holding the door open, as his wife was doing on the east side, he would not have been hurt. He and Mrs. Hatcher, of course, were voluntarily assisting Miss Cantrell. We must accept as true his statement that he took the position before the left front door of the car in order to suggest to Miss Cantrell how to get the motor started, as she seemed to have choked it at first. Her mind was occupied with her endeavor to start the motor.

In this statement we have endeavored to include all facts as testified to in support of the right of action. In his instruction to the jury, the circuit judge said:

"Mr. Hatcher is a good man, and he is a mighty good neighbor out there, such a neighbor as we all like to have, but he was a volunteer out there on that occasion and the defendants did not owe him any legal duty otherwise than not wilfully to injury him. The defendants would not be liable unless it was an act of gross negligence. So that, in my view of the law, it is not a case of legal liability, and you may return a verdict for the defendants."

The rules are that a mere stranger to the work who undertook, without invitation, to assist, cannot recover for injuries sustained unless they proximately resulted from gross negligence, willfulness, or wantonness in respect to his safety (45 C. J., 840; 20 R. C. L., 57, section 53; Richardson v. Babcock & Wilcox Co. (C. C. A.), 175 Fed, 897); but that such person acting as an invitee can recover for injuries sustained proximately from violation of a duty to exercise ordinary care and prudence toward him under the circumstances (20 R. C. L., 55, and cases cited; Glaser v. Rothschild, 221 Mo., 180, 120 S. W., 1, 22 L. R. A. (N. S.), 1045, 17 Ann. Cas., 576; Chattanooga Warehouse Co. v. Anderson, 141 Tenn., 293, 210 S. W., 153; Buckeye Cotton Oil Co. v. Campagna, 146 Tenn., 389, 394, 242 S. W., 646; Worsham v. Dempster, 148 Tenn., 267, 275, 255 S. W., 52). Such invitation may be either express or implied. 20 R. C. L., 55; 45 C. J., 808, and cases cited. In Worsham v. Dempster, 148 Tenn., 267, 275, 255 S. W., 52, 54, it is said:

"The general rule is succinctly, but accurately, stated by Mr. Cooley in his work on Torts (pages 604, 607), and approved by the Supreme Court of the United States in Bennett v. L. & N. Railroad Co., 102 U. S., 577, 26 L. Ed., 236, as follows:

" 'When one expressly or by implication invites others to come upon his premises, whether for business or for any other purpose, it is his duty to be reasonably sure that he is not inviting them into danger, and to that end he must exercise ordinary care and prudence to render the premises reasonably safe for the visit.'  .  .  .

"Implied invitation is thus defined by Shearman & Redfield· on Negligence (6 Ed.), section 706:

" 'Invitation by the owner or occupant is implied by law, where the person going on the premises does so in the interest or for the benefit, real or supposed, of such owner or occupant, or in the matter of mutual interest, or in the usual course of business, or where the person injured is present in the performance of duty, official or otherwise.'

"The great weight of authority, however, qualifies this definition of implied invitation by providing that where one goes upon the premises of another, for any of the purposes stated above, he must confine himself to such parts of the premises as are included in the invitation. Such implied invitation does not involve in its scope such parts of the establishment to which the public is not invited. It is only those parts of the premises where the person invited is expected to be that the owner is required to keep in a reasonably safe condition."

It is true that in the cases thus cited, as to the status of the person injured, the injuries were sustained from defects in the premises; but they involve the fundamental question whether or not the injured persons were invitees; and it follows that, if such person was an invitee, the duty to exercise ordinary care arose whether the injury was due to conduct of the defendant at the time or to defects in the premises.

Where one enters the premises of another upon an express or implied invitation extended by the latter, or by some one in his behalf, the right of one accepting the invitation without danger of personal injury is not limited to the specific place to which the invtiation refers, but extends to such other parts of the premises as may be visited by the invitee for a purpose reasonably incidental to that for which the invitation was extended. See note to Glaser v. Rothschild, 17 Ann. Cas., 591, and cases cited.

To constitute one entering the premises of another an invitee, it must appear that his purpose was one of interest or. advantage to the owner or occupant. 20 R. C. L., 69. An invitation may be implied where the entry on the premises is for a purpose which is, or is supposed to be, beneficial to the owner or occupant, and certainly this is true when the person enters with the knowledge of the owner or occupant for the manifest purpose of assisting him and no objection is made. 45 C. J., 812, and cases cited.

In the instant cause the jury might reasonably have concluded that the plaintiff was an invitee upon the premises; that his presence at the side of the automobile was for the purpose of assisting Miss Cantrell in starting the motor by giving suggestions; and that therefore he was not at a place which was not reasonably incidental to the place to which he was impliedly invited.

Whether or not Miss Cantrell was excusable by the existence of an emergency which caused her to omit to act in a most judicious manner, with want of time in which to form a judgment (Moody v. Gulf Refining Co., 142 Tenn., 280, 218 S. W., 817, 8 A. L. R., 1243), would be a question for the jury to determine. It would be for the jury to say whether or not she was conscious, or should have been conscious, of the danger to the plaintiff when she began to back the car out of the garage, and, if so, whether or not such emergency existed as would excuse her.

Whether or not the plaintiff was guilty of contributory negligence barring a recovery was, in our opinion, an issue for the jury to determine. It is true that where the facts are incontrovertible, this question becomes one for the court. Kansas City, M. & B. R. Co. v. Williford, 115 Tenn., 108, 88 S. W., 178; Chattanooga Light & Power Co. v. Hodges, 109 Tenn., 333, 70 S. W., 616, 60 L. R. A., 459, 97 Am. St. Rep., 844; Johnson v. Warwick, 148 Tenn., 209, 254 S. W., 553. But where the facts are fairly debatable, or where they are undisputed and intelligent minds may draw different conclusions as to whether under the circumstances conceded, the plaintiff's conduct has been that of an ordinary prudent man, are questions for the jury to determine. Philip Carey Roofing & Manufacturing Co. v. Black, 129 Tenn., 30, 164 S. W., 1183.

A jury might reasonably reach the view that the plaintiff, standing close to the side of the garage room, could reasonably believe that he was safe from the injury, not anticipating that the young lady would suddenly turn the wheel of the car to the left and back against him, but would back straight to a point where she could then turn the car in the alley; and that he had a reasonable belief that she saw him as he stood there and therefore would not strike him with the car. On the other hand, the jury might reasonably conclude that in placing himself in that narrow space knowing that she was acting in an emergency and in much excitement, he should have anticipated that the automobile was likely to strike him and inflict injuries upon him.

These issues—whether plaintiff was a mere volunteer or an invitee, whether Miss Cantrell was excusable by the emergency, and whether or not the plaintiff by his own negligence proximately brought the injuries upon himself—should have been determined by the jury. We realize that these questions have involved close discrimination in testing the correctness of the action of the trial judge in directing a

verdict for the defendants; and we have reached our conclusion with the greatest respect for the judgment of the trial judge.

The judgment of the circuit court is reversed. The verdict is set aside and the cause will be remanded to that court for a new trial. The costs of the appeal will be adjudged against the defendants in error. The costs in the circuit court will abide the action of that court.

Faw, P. J., and Crownover, J., concur.