Eilene HUDSON and Lawrence Hudson,
Plaintiffs-Appellants,

v.

Jose GAITAN and Elizabeth Gaitan,
Defendants-Appellees.

Supreme Court of Tennessee,
at Knoxville.

Aug. 21, 1984.

Randall L. Nelson, Chattanooga, for plaintiffs-appellants; Eugene N. Collins,

Chattanooga, Robert E. Pryor (amicus curiae), Knoxville, of counsel.

Harry Berke, Chattanooga, Robert R. Campbell (amicus curiae), Knoxville, for defendants-appellees.

## OPINION

BROCK, Justice.

The plaintiffs, Mr. and Mrs. Hudson,[1] filed this action for damages against Mr. and Mrs. Gaitan for personal injuries suffered by Mrs. Hudson on the premises of the defendants while she was a guest in the home of the defendants. The jury found the issues in favor of the defendants and the plaintiffs' motion for new trial was overruled and they appealed to the Court of Appeals which affirmed the judgment of the trial court.

The issues arise out of the factual background stated by the Court of Appeals as follows:

"The plaintiffs-appellants, Eilene Hudson and Lawrence Hudson, were invited as social guests to the home of the defendants-appellees, Jose Gaitan and Elizabeth Gaitan, for a July 4 covered dish outdoor picnic. The plaintiffs arrived at the defendants' home about Noon. They parked their car in front of defendants' house and walked down the driveway leading to the rear of the house where they placed the food they had brought for the occasion on a table in the back yard. They were greeted there by Mrs. Gaitan and invited into the house. They entered the house from a deck at the side and were invited to make a tour of the house to view some recent remodeling the Gaitans had done. After touring the house Mrs. Gaitan returned to the back yard while Mrs. Hudson remained in the house while a drink was being made for her. She then started to leave the house with a drink in one hand and a plastic jug of lemonade in the other. The doorway which she used for an exit is located just off the kitchen. The main door swings inside and a storm door swings out and opens over three risers of steps. Mrs. Hudson had not passed through this door before and as she went through the door she failed to step down on the step and fell onto the asphalt pavement at the base of the steps. She struck her head on the pavement, resulting in severe personal injuries.

\* \* \* \* \* \*

"The residence of the defendants is located within the city limits of Chattanooga and the plaintiffs introduced an ordinance of the city showing it had adopted as a building code of the city the 1976 edition of the Southern Building Code. This ordinance was in effect at the time the portion of the defendants' residence was constructed which is served by the steps and was in effect at the time the accident occurred. As pertinent here, the building code provides that every building erected after the adoption of the code shall meet the following requirement: 'All stairs shall have walls with hand rails or well secured hand rails or guards on both sides of the stairs of not less than 30 nor more than 34 inches high. Stairs of less than 44 inches in width may have hand rails on one side only ... exit doorways shall not be opened immediately upon a flight of stairs. A landing of at least the width of the door shall be provided.'

"No hand rails were placed at the steps nor was there a landing the width of the door as provided in the ordinance. The storm door opened immediately upon the flight of steps in violation of the ordinance. This constituted negligence per se on behalf of the defendants. However, this court held in the case of *Anthony v. Anthony*, 60 Tenn.App. 143, 444 S.W.2d 714 (1969) that 'ordinary negligence' will not sustain a recovery by a guest against his host."

Additional facts to be considered are: The storm door through which Mrs. Hudson passed immediately before her fall had a solid panel at its base making it difficult

---

1. Since the argument of this case Mr. Hudson has died.

if not impossible to see through to the steps outside; the concrete steps over which the storm door opened had no hand rail and there was no platform to step onto as one left the house.

The plaintiffs did not allege or attempt to prove that the defendants had been guilty of willful wrongdoing or that they had been guilty of gross negligence; however, they did rely upon the "trap doctrine." The primary insistence of the plaintiffs was that the defendants had been guilty of negligence which constituted the direct and proximate cause of Mrs. Hudson's injuries and that defendants should therefore be liable in damages, that the unlawful condition of the stairs which had recently been constructed caused Mrs. Hudson's fall and resulting injuries. The plaintiffs have consistently urged the trial court, the Court of Appeals and this Court that the doctrine of premises liability should be changed so that the owners and occupiers of premises have the duty to exercise reasonable care toward their "social guests." The plaintiffs requested the trial court to give jury instructions charging a standard of ordinary care but these requested instructions were denied by the trial court and this action was affirmed by the Court of Appeals which stated that, although it found plaintiffs' insistence to be most persuasive, it has no choice but to follow *stare decisis* and adhere to the old common law rule denying a duty of reasonable care toward social guests. We granted the application of the plaintiffs for discretionary review to consider the proper standard of care to be applied in such cases.

The trial court and the Court of Appeals have applied the rule announced in *Walker v. Williams,* 215 Tenn. 195, 384 S.W.2d 447 (1964) wherein it was held that a social guest is a licensee to whom the owner owes no duty except to refrain from willfully injuring him, from committing gross negligence resulting in injury to him and from leading him into a trap resulting in his injury. *See, also, Anthony v. Anthony,* 60 Tenn.App. 143, 444 S.W.2d 714 (1969) in which it was held that "ordinary negligence" would not sustain a recovery by a social guest against his host.

Indeed, this jurisdiction has applied in cases of premises liability the old common law doctrine whereby the nature and extent of the duty owed by the owner or occupier to persons injured on his land was made to depend upon whether the injured person could be classified as an "invitee," a "licensee," or a "trespasser." *Hall v. Duke,* Tenn., 513 S.W.2d 776 (1974); *Olsen v. Robinson,* Tenn., 496 S.W.2d 462 (1973); *McCormick v. Waters,* Tenn., 594 S.W.2d 385 (1980). The appellants strongly urge that we abandon the rigid common law distinctions made between "invitees" and "licensees."

In considering the continuing validity of the invitee-licensee distinctions in premises liability law, it may be helpful to look back to see from whence those distinctions came.

"The distinctions which the common law draws between licensee and invitee were inherited from a culture deeply rooted to the land, a culture which traced many of its standards to a heritage of feudalism. In any effort to do justice in an industralized urban society, with its complex economic and individual relationships, modern common-law courts have found it necessary to formulate increasingly subtle verbal refinements, to create subclassifications among traditional common-law categories, and to delineate fine gradations in the standards of care which the landowner owes to each. Yet even within a single jurisdiction, the classifications and the subclassifications bred by the common law have produced confusion and conflict. As new distinctions have been spawned, older ones have become obscured. Through this semantic morass the common law has moved, unevenly and with hesitation, towards 'imposing on owners and occupiers a single duty of reasonable care in all the circumstances.' "For the admiralty law at this late date to import such conceptual distinctions would be foreign to its traditions of simplicity and practicality. (Citations omit-

ted.) The incorporation of such concepts appears particularly unwarranted when it is remembered that they originated under a legal system in which status depended almost entirely upon the nature of the individual's estate with respect to real property, a legal system in that respect entirely alien to the law of the sea. We hold that the owner of a ship in navigable waters owes to all who are on board for purposes not inimical to his legitimate interests the duty of exercising reasonable care under the circumstances of each case." *Kermarec v. Compagnie Generale Transatlantique*, 358 U.S. 625, 630–32, 79 S.Ct. 406, 410, 3 L.Ed.2d 550 (1959).

In the *Kermarec* case, a unanimous Supreme Court, speaking through Mr. Justice Stewart, refused to apply the common law "invitee-licensee" distinctions to admiralty cases and, instead, adopted the rule that vessel owners would owe to all who come aboard a maritime vessel the "duty of exercising reasonable care under the circumstances of each case" so long as he came aboard "for purposes not inimical to" the legitimate interests of the owner of the vessel.

That rejection by the Supreme Court of the "invitee-licensee" distinctions was the beginning of a trend, which has rapidly gained momentum, whereby the courts of last resort in many of the jurisdictions of this country have determined that the common law distinction between licensees and invitees will no longer be followed and, instead, there is recognized a duty of reasonable care which the occupier of land owes to all lawful visitors. The abolition of the licensee-invitee distinction prevents the plaintiff's status as a licensee or invitee from being the sole determinative factor in assessing the occupier's liability; but, the occupier's foreseeability of the visitor's presence and the time, manner, place and surrounding circumstances of his entry continue to be relevant factors in determin-

ing the likelihood of injury to him. *Mounsey v. Ellard*, 363 Mass. 693, 297 N.E.2d 43 (1973); *Eddy v. Syracuse University*, 78 A.D.2d 989, 433 N.Y.S.2d 923 (1980). *Accord: Rowland v. Christian*, 69 Cal.2d 108, 70 Cal.Rptr. 97, 443 P.2d 561, 32 A.L.R.3d 496 (1968); *Pickard v. City and County of Honolulu*, 51 Hawaii 134, 452 P.2d 445 (1969); *Potts v. Amis*, 62 Wash.2d 777, 384 P.2d 825 (1963); *Smith v. Arbaugh's Restaurant, Inc.*, 469 F.2d 97 (D.C.Cir.1972); *Mariorenzi v. Joseph DiPonte, Inc.*, 114 R.I. 294, 333 A.2d 127 (1975); *Peterson v. Balach*, 294 Minn. 161, 199 N.W.2d 639 (1972); *Wood v. Camp*, Fla., 284 So.2d 691 (1973); *Memel v. Reimer*, 85 Wash.2d 685, 538 P.2d 517 (1975); *Antoniewicz v. Reszcynski*, 70 Wis.2d 836, 236 N.W.2d 1 (1975); *Bourg v. Redden*, La.App., 351 So.2d 1300 (1977); *Ouellette v. Blanchard*, 116 N.H. 552, 364 A.2d 631 (1976); *Paquette v. Joyce*, 117 N.H. 832, 379 A.2d 207 (1977); *O'Leary v. Coenen*, N.D., 251 N.W.2d 746 (1977); *Poulin v. Colby College*, Me., 402 A.2d 846 (1979).[2]

In recent years, as courts perceived the harshness resulting from a rigid application of the common law classification of invitee, licensee and trespasser, they began to modify the land occupiers' immunities by carving out numerous exceptions and subclassifications; as a result, today the law is a complex patchwork of legal classifications which are by no means uniformly interpreted in the various jurisdictions. *See* Note, 44 N.Y.U.Law Review 426 (1969); Long, Land Occupant's Liability to Invitees, Licensees and Trespassers, 31 Tenn.L. Review 485 (1964).

"The modern rule which rejects the status classifications as the determinative basis of the standard of care owed by landowners to entrants eliminates the complexity and confusion of the law created by the attempts of the courts to avoid, by creating exceptions and new classifications, the harshness resulting

---

**2.** The foregoing list of authorities is not intended to be exhaustive. *See* Annot. at 32 A.L.R.3d 508.

from a rigid application of the classifications." Annot., 32 A.L.R.3d 508, 515.

In this jurisdiction the courts have generally held that the owner or occupant of land owes a duty of ordinary care to an "invitee," but, to a "licensee" or "trespasser" owes only the duty to not injure him willfully or by gross negligence nor lead him into a trap. *Jack M. Bass & Company v. Parker*, 208 Tenn. 38, 343 S.W.2d 879 (1961).

The "invitee" status has generally been reserved to those who come onto the premises of the owner or occupant for business purposes, *Dawson v. Sears, Roebuck & Co.*, 217 Tenn. 72, 394 S.W.2d 877 (1965), or, at the very least, it must appear that the purpose of the visitor was one of interest or advantage to the owner or occupant. *Hatcher v. Cantrell*, 16 Tenn.App. 544, 65 S.W.2d 247 (1933); *American Nat. Bank v. Wolfe*, 22 Tenn.App. 642, 125 S.W.2d 193 (1938). More recently, it has been said that one who comes onto private premises, not normally open to the public, for the purpose of volunteering his assistance and, although such assistance confers a benefit upon the owner, is to be treated as a "mere licensee," unless circumstances indicate that he could reasonably expect protection in return for his services; that in order for a visitor to be considered as an "invitee" he must be on the owner's land for either a "public or business purpose"; and, that to determine whether a person is an "invitee" the test is whether the visitor is invited to transact business or to do work with the implied or expressed assurance that the place is prepared and safe for him. *Hall v. Duke, supra.*

"Social guests," no matter how cordially invited, have been denied the status of "invitee" and have been treated as mere "licensees," to whom the owner owed no duty except to refrain from willfully injuring him, from committing negligence so gross as to amount to willfulness, and from leading him into a trap. *Walker v. Williams,*

*supra; Olsen v. Robinson,* Tenn., 496 S.W.2d 462 (1973). Although called to the scene and most urgently invited by the owner or occupant of the premises, a policeman, *Burroughs Adding Mach. Co. v. Fryar*, 132 Tenn. 612, 179 S.W. 127 (1915), and a city fireman, *Buckeye Cotton Oil Co. v. Campagna*, 146 Tenn. 389, 242 S.W. 646 (1922), have been relegated to the status of "mere licensees," to whom the owner owed no duty of reasonable care but owed only a duty to refrain from willfully injuring him; but, a fireman going to premises located outside of his city and at the request of the owner, but being under no duty to do so, has been held to be accorded the status of "invitee," toward whom the owner owed a duty to exercise reasonable care. *Buckeye Cotton Oil Co. v. Campagna, supra.* Other illogical examples could be cited.

We have reached the conclusion that it is both illogical and unjust to continue to employ the common law rules distinguishing between "licensees" and "invitees" in determining the "premises liability" of owners and occupiers of land for injuries sustained by visitors upon that land. We make no judgment with respect to the duty owed to "trespassers" since that particular issue is not presented by this case.[3]

The common law classifications of one injured on land of another as an "invitee" or "licensee" are no longer determinative in this jurisdiction in assessing the duty of care owed by the landowner to the person injured; the duty owed is one of reasonable care under all of the attendant circumstances, foreseeability of the presence of the visitor and the likelihood of harm to him being one of the principal factors in assessing liability. Care that is reasonable in one context may be wholly unreasonable or more than reasonable in a different context. *Eddy v. Syracuse University, supra; Poulin v. Colby College, supra; O'Leary v. Coenen, supra.* This duty of reasonable care shall extend to all

---

**3.** It is of course understood that this decision can have no effect on different rules laid down by statute; thus, rules stated in T.C.A., §§ 70-7- 101 through 104, §§ 11-10-101 and 102, § 66-28-304 or any other statute are not affected.

persons who come upon the defendant's property with his consent, express or implied. *Antoniewicz v. Reszcynski, supra; Peterson v. Balach, supra; Ouellette v. Blanchard, supra; Paquette v. Joyce, supra.* The defense of contributory negligence shall continue to be available to the defendant in such cases.

The rule announced in this case, abolishing the distinction between licensees and invitees in determining a landowner's duty to visitors upon his premises, is to be applied to all cases involving plaintiffs who are entitled to reasonable care under the circumstances, except such cases as have been concluded by judgment or settlement or have been barred by the running of a statute of limitations. *See Bouchard v. DeGagne,* Mass., 329 N.E.2d 114 (1975).

We, therefore, hold that the trial court erred in denying the plaintiffs' requested instructions No. 1, No. 2 and No. 2A. The motion for a new trial on those grounds should have been granted. Accordingly, the judgments of the Court of Appeals and the trial court are reversed and this cause is remanded for a new trial. Costs are taxed against appellees.

COOPER, C.J., and FONES, HARBISON and DROWOTA, JJ., concur.