IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
February 11, 2002 Session

## MAGDALENE A. MILLER, ET AL. v. MT. LAUREL CHALETS, INC., ET AL.

Appeal from the Circuit Court for Sevier County
No. 98CV1124-II      Richard R. Vance, Judge

FILED MAY 31, 2002

No. E2001-00863-COA-R3-CV

Magdalene A. Miller fell down a flight of stairs at a rental chalet in Gatlinburg. She and her husband, Robert Miller, sued Bob Light, the owner of the chalet, and Mt. Laurel Chalets, Inc., the rental agent for the chalet. Both defendants filed a motion for summary judgment. Both motions were granted. We affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court
Affirmed; Case Remanded**

CHARLES D. SUSANO, JR., J., delivered the opinion of the court, in which HOUSTON M. GODDARD, P.J., and HERSCHEL P. FRANKS, J., joined.

W. I. Howell Acuff, Cookeville, Tennessee, for the appellants, Magdalene A. Miller and Robert Miller.

James W. Harrison, Morristown, Tennessee, for the appellee, Mt. Laurel Chalets, Inc.

Linda J. Hamilton Mowles, Knoxville, Tennessee, for the appellee, Bob Light.

## OPINION

I.

The plaintiffs rented the chalet – called "Southern Comfort" – for the period from October 17, 1997, through October 22, 1997. The chalet had three levels, the lowest of which was a basement that could be reached by a flight of stairs leading from the second level or the plaintiffs' bedroom level. The configuration of the third level is not material to this case.

The doors to the bedroom occupied by the plaintiffs, a bathroom, and the basement steps were all located on one end of a hallway on the second level. As one approached that end of the hallway, he or she would be walking toward the bathroom immediately to the front. The doorknob on the bathroom door was on the right side of the door, and the door opened into the bathroom. When one stood right at the bathroom door at the end of the hall, the bedroom door would be immediately to the left and the door to the stairs to the basement would be to the right. In other words, the bedroom door and the basement door were directly across from one another. The bedroom door – like the bathroom door – had a doorknob on the right and pushed into the room. The door to the basement, on the other hand, had a doorknob on the left of the door and the door pulled out exposing the steps. As the above description reflects, the three doors were on different walls, but in close proximity to one another.

The door to the stairs to the basement had an operable lock. It could be locked from the hallway side if one chose to do so.

The Millers spent the nights of October 17, 18, 19, 20, and 21, 1997, in the chalet. They slept each of these evenings in the bedroom mentioned above. Prior to her fall on October 22, 1997, Ms. Miller had gotten out of bed on previous occasions, gone into the hallway, and turned left into the bathroom without incident. She acknowledged having been to the basement on at least five occasions prior to the incident on October 22, 1997.

The lights in the chalet were operable. The plaintiffs had not noticed any items in the chalet that needed repair or maintenance. They were not aware of any defects in the carpet on the stairs leading to the basement.

In the morning hours of October 22, 1997, Ms. Miller got up from bed to use the bathroom. She did not turn on any of the lights that were available to her. Although she could not see clearly, Ms. Miller left her bedroom, went out into the hall, and, instead of turning left into the bathroom, went straight and opened the closed door to the stairway to the basement. Without determining where she stood, she stepped forward into the darkness. She fell down the stairs, causing the injuries alleged in the complaint.

Ms. Miller acknowledges that she could not see well enough to ascertain that the unmarked door she was opening led to the stairwell and not to the bathroom. There were no warning signs posted as to the stairwell or otherwise.

II.

The plaintiffs contended in their complaint that the defendants failed to warn them "adequately" of, in the words of the complaint, what the "defendants knew, or in the exercise of reasonable care should have known," *i.e.*, "that plaintiffs were endangered by [the] condition of the premises." A fair reading of the complaint in favor of the plaintiffs reflects that they basically assert

that the chalet was in a dangerous state because the defendants failed to post warnings with respect to the fact that the door opened by Ms. Miller was a door to a flight of stairs to the basement.

In general terms, the complaint also alleges that the plaintiffs contracted for safe lodging and that "[t]he defendants breached this contract and breached the implied warranty of habitability by failing to provide a reasonably safe lodging given the dangerous condition described" in the complaint.

The sole issue for us is whether "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. Tenn. R. Civ. P. 56.04.

III.

In *Eaton v. McLain*, 891 S.W.2d 587 (Tenn. 1994), the Supreme Court was presented with a factual scenario very similar to the facts of the instant case. In *Eaton*, the plaintiff was visiting the home of her daughter and son-in-law, the defendants. *Id*. at 588. When the plaintiff retired for the evening, she was advised by her daughter to use the bedroom of the plaintiff's granddaughter who was spending the night at a friend's house. *Id*. The bedroom was located along a hallway that connected a kitchen/den area on one end of the house with the master bedroom on the other end. *Id*. "Directly across the hall from [the plaintiff's] bedroom [were] two virtually identical doors that are adjacent to one another: the door to the right open[ed] into a bathroom; and the door to the left open[ed] onto a flight of stairs leading down to the basement." *Id*. The lock on the basement door was not operable. *Id*. at 588-89.

Before the defendants went to bed, Ms. McLain closed both of the doors across from the plaintiff's bedroom and turned off the hallway and bathroom lights. *Id*. at 589. The opinion in *Eaton* recites what happened next:

> Ms. Eaton awoke about 5:00 the next morning needing to go to the bathroom. Although it was very dark when she awoke, Ms. Eaton did not turn on either the light in [her] bedroom or the light in the hallway as she attempted to make her way to the bathroom. Instead, she proceeded across the hall and opened the basement door, believing it to be the bathroom door, and stepped inside. Ms. Eaton fell down the stairs and sustained injuries to her elbow and back.

*Id*.

The plaintiff in *Eaton* brought suit against the defendants "alleging that they were negligent in turning the hallway and bathroom lights off, in failing to provide a working lock on the basement door, and in failing to warn her of the location of the stairs." *Id*. She testified that she did not turn

on any lights when she got up because she was afraid she would wake her grandson who was sleeping "in another bedroom a short distance down the hall." *Id*. She said that she was not completely aware of the layout of the defendants' home, but she acknowledged that she knew the house had a basement and that she had been in the basement. *Id*. She could not remember if she had reached the basement on any of her prior visits by descending the stairs. *Id.*

The jury in *Eaton* found the defendants to be 60% at fault. On appeal, the Court of Appeals reversed and dismissed the plaintiff's complaint. The Supreme Court granted the defendants' application for permission to appeal for two reasons, one of which is not material to the facts of the instant case. *Id*. at 590. As pertinent to this case, the Supreme Court stated that it granted the application "to address the Court [of Appeals'] holding regarding the duty aspect of [the plaintiff's] negligence claims." *Id*.

The Supreme Court in *Eaton* concluded that the plaintiff there "failed to submit legally sufficient evidence as to the duty element of her claims of negligence." *Id*. at 593. Consequently, it held that "the plaintiff's action must be dismissed because she failed to establish one of the five required elements of any negligence cause of action." *Id*. at 597.

In *Eaton*, the Court alluded to its opinion in the 1984 case of *Hudson v. Gaitan*, 675 S.W.2d 699 (Tenn. 1984). In *Hudson*, the Court "abandoned the licensee status for social guests, holding instead that the premises owner owed to the social guest the same duty as that owed to an invitee–a duty of reasonable care under all the circumstances." *See Eaton*, 891 S.W.2d at 593. The Court in *Eaton* stated that "[t]herefore, the McLains owed Ms. Eaton a duty to maintain the premises in a reasonably safe and suitable condition; this general duty included the responsibility of either removing or warning against any latent dangerous condition on the premises of which the McLains were aware or should have been aware through the exercise of reasonable diligence." *Id*. at 593-94. More specifically, the Court in *Eaton* opined as follows:

> Therefore, we must examine the concept of duty generally in order to determine whether the McLains' duty to maintain reasonably safe premises included the specific responsibility to leave the lights on, lock the basement door, or *warn of the location of the staircase*.

*Id*. at 594 (emphasis added).

The Supreme Court concluded that the defendants' general duty of reasonable care did not include the specific duties alleged in the complaint:

> ...the question of whether the McLains' general duty of care encompasses the duty to guard against the acts set forth in the complaint involves an analysis of the foreseeability of the risk to which Ms. Eaton was exposed. In other words, the issue is whether Ms. Eaton has made "any showing from which it can be said that the

-4-

*defendants reasonably knew or should have known of the probability
of an occurrence such as the one which caused [her] injuries." **Id**.*

We are of the opinion that no such showing has been made. In order
for the McLains to be charged with the duty to leave on the light in
the hall and to lock the basement door, they must have been able to
reasonably foresee that Ms. Eaton would get out of bed in total
darkness, walk across the hall, and step into the basement stairwell,
all without turning on any lighting whatsoever. While our holding
would likely be different if no lighting had been provided or if it had
been inoperative, Ms. Eaton's failure to turn on any lights, coupled
with her willingness to open the door and step into an unfamiliar area,
is such a radical departure from reasonable conduct under the
circumstances that the McLains could not have reasonably foreseen
that conduct and its consequences. To hold otherwise would
necessarily cast the premises owner in the role of an absolute insurer
of the social guest's safety, which is not contemplated by our
negligence law.

Moreover, we hold that the McLains did not have a duty to warn Ms.
Eaton of the location of the stairs. Although Tennessee law provides
that premises owners owe invitees the duty to warn of latent or
hidden dangers, this duty does not arise if the danger is open and
obvious. Because stairs descending from a hallway to a basement are
a common feature of many homes, they are not inherently dangerous.

**Id**. at 594-95 (emphasis in ***Eaton***) (citations omitted).

We find and hold that ***Eaton*** controls our decision in this case.

IV.

The facts that are material to a resolution of this case are as stated in Section I of this opinion.
Those facts are not in dispute. While the parties argue about the amount of light illuminating the
hallway from other areas of the house when Ms. Miller got up to go to the bathroom, the plaintiffs
acknowledge that "it is undisputed that Ms. Miller could not see well enough to ascertain that the
unmarked door she was opening led to the stairwell and not to the bathroom." Because of this
acknowledgment on the part of the plaintiffs, the *amount* of the light in the hallway from whatever
source is not material to a resolution of the issues made in the pleadings. What is material is that Ms.
Miller did not turn on any of the lights in the bedroom and hall when there was insufficient light for
her to see where she was going.

-5-

We find that the undisputed material facts demonstrate that the defendants are entitled to summary judgment because these facts do not make out a duty on the part of the defendants to warn the plaintiffs that the door opened by Ms. Miller on that fateful early morning was a door to the basement and not to the bathroom. Picking up on the language from *Eaton*, *see* 891 S.W.2d at 594, before the defendants could be charged with an obligation to warn that the subject door led to the basement and not the bathroom, they would have to had foreseen that Ms. Miller would get out of bed in darkness, "walk across the hall, and step into the basement stairwell, all without turning on any lighting whatsoever." *Id*. The defendants could not have reasonably foreseen this conduct especially with respect to a lady who had used the bathroom at night on a number of occasions during the week and had visited the basement on at least five occasions prior to her fall on October 22, 1997.

In a number of respects, the facts of the instant case are even stronger for the defendants than are the facts in *Eaton*. In *Eaton*, the plaintiff was making her initial visit to the bathroom in the evening; Ms. Miller had made earlier nocturnal visits to the bathroom during the four previous evenings. While Ms. Eaton had been in the basement before, these occurrences were at times in the past; Ms. Miller's experiences with the basement had to be fresh on her mind. The lock on the door to the basement in *Eaton* was inoperable; it is undisputed that the lock to the basement door in the instant case was fully operable and could have been engaged by the plaintiffs, but was not.

Contrary to the plaintiffs' assertion, it does not matter that the plaintiffs were business invitees of the defendants, whereas Ms. Eaton was a social guest. As the Supreme Court again pointed out in *Eaton*, *see* 891 S.W.2d at 593, this distinction was rendered immaterial by the holding in the *Hudson* case.

The defendants are entitled to summary judgment because we find that the undisputed material facts fail to show legally sufficient evidence as to the duty element in the plaintiffs' claims of negligence.

While not argued in the Millers' brief, we find nothing in the undisputed material facts to support their alternative theory of breach of contract.

V.

The judgment of the trial court is affirmed. Costs on appeal are taxed to Magdalene A. Miller and Robert Miller. This case is remanded to the trial court for collection of costs assessed there.

_____

CHARLES D. SUSANO, JR., JUDGE