# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE
April 11, 2013 Session

## ARLEEN CHRISTIAN v. EBENEZER HOMES OF TENNESSEE, INC. D/B/A GOOD SAMARITAN NURSING HOME

### Appeal from the Circuit Court for Davidson County
### No. 10C4142     Hamilton V. Gayden, Jr., Judge

### No. M2012-01986-COA-R3-CV - Filed July 17, 2013

Visitor to a nursing home who was injured when a door swung into her brought suit against the nursing home, alleging that the door constituted a dangerous and defective condition and that the nursing home failed to exercise reasonable care to avoid injuries to visitors. The nursing home filed a motion for summary judgment which was granted on the basis that the door did not constitute a dangerous or defective condition. Finding no error, we affirm the judgment.

### Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed.

RICHARD H. DINKINS, J., delivered the opinion of the court, in which PATRICIA J. COTTRELL, P. J., M. S., and ANDY D. BENNETT, JR., J., joined.

Terry Renease Clayton, Nashville, Tennessee, for the Appellant, Arleen Christian.

Michael T. Schmitt, Nashville, Tennessee, for the Appellee, Ebenezer Homes of Tennessee, Inc., d/b/a Good Samaritan Nursing Home.

## OPINION

This appeal arises out of an action brought by Arleen Christian against the Good Samaritan Nursing Home ("Good Samaritan") to recover damages for injuries she sustained during a visit to the nursing home. Ms. Christian's complaint alleged that on November 27, 2007, she was visiting her father, a resident of Good Samaritan; that she was leaving a meeting with Patricia Sawyers, a social worker there; and that, as she and Ms. Sawyers

approached a set of windowless doors[1], a staff person opened one of the doors, which swung into Ms. Christian's path, striking her and causing her injuries.

Ms. Christian filed suit against the Good Samaritan on October 22, 2010, alleging four specific acts of negligence:  failure to maintain the safe flow of human traffic throughout the building; failure to post proper signage on the 400 Hall doors; failure to place a window in the door; and failure to take precautionary measures to avoid the accident.  Plaintiff requested a judgment in the amount of $375,000.00, as well as past and future medical expenses.[2]

In due course, Good Samaritan moved for summary judgment, contending the doors did not constitute a dangerous condition; it supported the motion with its responses to Ms. Christian's interrogatories, excerpts from her deposition and the depositions of several Good Samaritan employees, and a Tenn. R. Civ. P. 56.03 Statement of Material Facts.  Ms. Christian answered to the motion, filing a response to the Rule 56.03 statement, excerpts from the same depositions, and a memorandum.

The court granted the motion, holding that Good Samaritan established that the 400 Hall doors causing the injury were free from defect and did not constitute a dangerous or defective condition; the court held that Good Samaritan had effectively negated an essential element of the premises liability claim.  Ms. Christian appeals.

## I. STANDARD OF REVIEW

When a motion for summary judgment is made, the moving party has the burden of showing that "there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law."  Tenn. R. Civ. P. 56.04.  The moving party may accomplish this by either: (1) affirmatively negating an essential element of the non-moving party's claim; or (2) showing that the non-moving party will not be able to prove an essential element at trial.  *Hannan v. Alltel Publ'g Co.*, 270 S.W.3d 1, 8-9 (Tenn. 2008).  If the moving party's motion is properly supported, "[t]he burden of production then shifts to the nonmoving party to show that a genuine issue of material fact exists."  *Id.* at 5 (citing *Byrd v. Hall*, 847 S.W.2d 208, 215(Tenn. 1993)).  The non-moving party may accomplish this by:

---

[1]  At the trial court, the doors were referred to as the "400 Hall doors"; we will refer to them by the same name.

[2]  An earlier suit filed by Ms. Christian on November 25, 2008, was voluntarily dismissed on July 27, 2010.

"(1) pointing to evidence establishing material factual disputes that were overlooked or ignored by the moving party; (2) rehabilitating the evidence attacked by the moving party; (3) producing additional evidence establishing the existence of a genuine issue for the trial; or (4) submitting an affidavit explaining the necessity for further discovery pursuant to Tenn. R. Civ. P. Rule 56.06."

*Martin v. Norfolk S. Ry. Co.*, 271 S.W.3d 76, 84 (Tenn. 2008) (citations omitted).

A trial court's decision on a motion for summary judgment enjoys no presumption of correctness on appeal. *Draper v. Westerfield*, 181 S.W.3d 283, 288 (Tenn. 2005); *BellSouth Adver. & Publ. Co. v. Johnson*, 100 S.W.3d 202, 205 (Tenn. 2003); *Scott v. Ashland Healthcare Ctr., Inc.*, 49 S.W.3d 281, 284 (Tenn. 2001); *Penley v. Honda Motor Co.*, 31 S.W.3d 181, 183 (Tenn. 2000). We review the summary judgment decision as a question of law. *Finister v. Humboldt Gen. Hosp., Inc.*, 970 S.W.2d 435, 437 (Tenn.1998); *Robinson v. Omer*, 952 S.W.2d 423, 426 (Tenn.1997). Accordingly, this court must review the record *de novo* and make a fresh determination of whether the requirements of Tenn. R. Civ. P. 56 have been met. *Eadie v. Complete Co., Inc.*, 142 S.W.3d 288, 291 (Tenn. 2004); *Blair v. West Town Mall*, 130 S.W.3d 761, 763 (Tenn. 2004); *Staples v. CBL & Assoc.*, 15 S.W.3d 83, 88 (Tenn. 2000).

In our review, we consider the evidence presented at the summary judgment stage in the light most favorable to the non-moving party, and afford that party all reasonable inferences. *Draper*, 181 S.W.3d at 288; *Doe v. HCA Health Servs., Inc.*, 46 S.W.3d 191, 196 (Tenn. 2001); *Memphis Hous. Auth. v. Thompson*, 38 S.W.3d 504, 507 (Tenn. 2001). We must determine first whether factual disputes exist and, if so, whether the disputed fact is material to the claim or defense upon which the summary judgment is predicated and whether the disputed fact creates a genuine issue for trial. *Byrd*, 847 S.W.2d at 214; *Rutherford v. Polar Tank Trailer, Inc.*, 978 S.W.2d 102, 104 (Tenn. Ct. App. 1998). "If there is a dispute as to any material fact or any doubt as to the conclusions to be drawn from that fact, the motion must be denied." *Byrd*, 847 S.W.2d at 211.

## II. DISCUSSION

In granting summary judgment, the court held that Good Samaritan had established that the "400 Hall doors were free from defect and did not constitute a dangerous or defective condition" and that Ms. Christian had "failed to set forth specific facts establishing the existence of disputed, material facts which must be resolved by the trier of fact." Ms. Christian contends that the evidence, viewed in the light most favorable to her, does not

permit a reasonable person to reach only one conclusion and therefore summary judgment was inappropriate.

The standard for establishing a dangerous or defective condition has been summarized as follows:

> The first element requires the court to determine whether the plaintiff is owed legal protection at the hands of the defendant. *Bradshaw v. Daniel*, 854 S.W.2d 865, 870 (Tenn. 1993). The owner of a premises owes a "general duty" to customers, guests, or invitees to use reasonable care to make the premises safe. *Stewart*, at \*4 (citing *Hudson v. Gaitan*, 675 S.W.2d 699 (Tenn.1984)). The duty of reasonable care requires that "an owner maintain the premises in a generally safe condition by removing or repairing potentially dangerous or defective conditions or by helping customers and guests avoid injury by warning them of the existence of a dangerous or defective condition on the premises of which the owner was or should have been aware." *Stewart*, at \*4 (citing *Blair v. Campbell*, 924 S.W.2d 75, 76 (Tenn.1996)). However, the owner is not "an insurer of the safety" of guests or customers on the premises, and the duty imposed on the owner does not include the responsibility to warrant the safety of a condition "for which no unreasonable risk is anticipated . . . ." *Stewart*, at \*4 (citing *Rice*, 979 S.W.2d at 309).
>
> The determination of whether a particular location is defective, dangerous or unsafe is a question of fact. *Helton v. Knox County*, 922 S.W.2d 877, 882 (Tenn.1996). In determining if a condition is, in fact, defective, unsafe, or dangerous, the Supreme Court has noted that with respect to the likelihood of a person sustaining an injury, "probability, not possibility, governs; that it is 'possible' ... does not make it dangerous." *Id.* at 883 (quoting *Forrester v. City of Nashville*, 169 S.W.2d 860, 861 (Tenn.1943)).

*Elkins v. Hawkins County*, No. E2004-02184-COA-R3-CV, 2005 WL 1183150, at \*4 (Tenn. Ct. App. May 19, 2005).

The basis for Good Samaritan's motion for summary judgment was that the door did not constitute a dangerous condition and that Good Samaritan had "affirmatively negate[d] the essential element of actual or constructive knowledge of a defect or dangerous condition." Good Samaritan's Rule 56.03 statement included the following assertions germane to the motion, all of which were admitted by Ms. Christian in her response to the statement, except for number 6, which was denied:

-4-

4. At the time of the accident at the center of this dispute, the Plaintiff's father had been a resident at Good Samaritan since August 23, 2006.

5. Since that time, Plaintiff visited her father on a regular basis consisting of multiple visits per week.

6. On every single visit, the Plaintiff would enter and exit the patient area through a set of double doors (hereinafter referred to as the "400 Hall" doors), which are at issue in this premises liability action.

7. The 400 Hall doors were a set of double smoke barrier doors with no windows, each door opening in one direction with the flow of traffic by way of a push bar.

8. On or about November 28, 2007, the Plaintiff was visiting Pat Sawyers, the social worker assigned to her father's care at Good Samaritan.

***

11. Upon approaching the 400 Hall doors, Karla Hill, a Certified Nurse Technician, was coming down 400 Hall and exited the hall through the 400 Hall doors.

12. When Ms. Hill opened the door that exits the 400 Hall, the door came into contact with the Plaintiff who was standing behind the door waiting to enter the 400 Hall through the other door that allows access to the 400 Hall.

13. Other than the incident at the center of this action, Plaintiff is not aware of any other incidents where an individual was injured by a door being opened at [the nursing home].

14. Duane Farnham, who was the administrator for [the building] since January 2005, never had any notice of complaints relative to the 400 Hall doors or any record of injury by a patient, visitor or employee regarding the 400 Hall doors.

15. Armando Rex Vadomar Santos, who was the assistant administrator for [the building] at the time of incident in question and had worked for [Defendant] since 2001, never had notice of any person being injured as a result of the 400 Hall doors opening on an individual.

16. Ms. Hill, who worked for [Defendant] since April 2007, has no knowledge of any other incidents regarding individuals being injured by the 400 Hall doors.

17. The 400 Hall doors were inspected weekly to insure proper closure, i.e., that the door would completely latch when closed.

18. The 400 Hall doors were in compliance with the Department of Health regulations for interior doors.

In addition to the Rule 56.03 statement, Good Samaritan relied upon the deposition testimony of Ms. Sawyers, Duane Farnham, an administrator at Good Samaritan, Armando Santos, as

assistant administrator, Karla Hill, a certified nursing technician, and Edgar Sical, a maintenance supervisor; their testimony confirmed the facts set forth in the Rule 56.03 statement.[3] The following sworn responses to Ms. Christian's interrogatories specifically addressed the issue of whether the doors were inspected and in compliance with safety regulations:

7. State the date upon which the interior door referred to in the complaint was last inspected prior to the occurrence alleged in the complaint.
ANSWER: The exact date is not known, but maintenance performs weekly inspections of all interior doors to insure proper closure, i.e., that the door would completely latch when closed to contain any fire.
8. Was the interior door referred to in the complaint instanced [sic] in accord with Davidson (County) ordinances pertaining to interior doors?
ANSWER: Yes. The door was also in accord with Department of Health regulations.

---

[3] Mr. Santos' deposition included the following relevant exchange:

Q: Are you familiar with any records relative to safety inspections that [the nursing home] maintains?
A: Safety inspection from the Department of Health?
Q: Yes.
A: Yeah, . . . of course we have that.
Q: How often are you inspected by the Department of Health?
A: By law, annually.

Mr. Farnham stated the following in his deposition:

Q: Have you ever had any record of any injuries by a patient or a visitor or an employee regarding the doors in the 400 Hall?
A: Only Ms. Christian.

Ms. Hill's deposition included a similar exchange:

Q: To your knowledge, had there been any other incidents regarding people being hit by these doors?
A: No.

Mr. Sical testified:

Q: Did you work on doors or anything here?
A: We asked to fix something broken here, lights, and check the doors, make sure it closed properly. And that's what we're doing here, make sure everything is fine.

-6-

This evidence showed that the 400 Hall doors were inspected according to regulations and that no other person had been injured by the doors; this supports the finding that the doors did not constitute a dangerous condition and did not pose a foreseeable risk of harm, thereby negating an essential element of Ms. Christian's claim. The burden then shifted to her to produce evidence showing that there was a genuine issue of fact that the doors constituted a dangerous condition.

In her response to Good Samaritan's Rule 56.03 statement, Ms. Christian asserted the following as additional undisputed facts:[4]

1. The defendant used to keep the doors open to 400 Hall prior to the incident resulting in injury to Plaintiff.
2. The defendant caused a sign to be posted on the door leading to 400 Hall which instructed employees to keep the door closed and to be careful when opening the door.
3. The defendant caused the door leading to the 400 Hall to be closed prior to the incident causing plaintiff's injury.
4. The door in which the plaintiff was injured did not have a window so that the individuals on either side could not see people entering or exiting the doors leading into 400 Hall.
5. The defendant had windows in doors leading to 500 Hall, 600 Hall, 200 Hall and 100 Hall.
6. The defendant kept the doors closed to 400 Hall to prevent patients from wondering (sic) out of their area.
7. Plaintiff was use (sic) to the doors leading to 400 Hall being open.
8. A corporate visitor, Ms. Valdomer, wanted windows put in the 400 Hall door just like the window in the doors leading to 100 Hall, 200 Hall, 500 Hall and 600 Hall after plaintiff's injury.
9. The plaintiff was on her way to the patient from Ms. Patricia Sawyers office when defendant's employee, Karla Hill open (sic) the door and collided with plaintiff causing her injury.
10. Sometimes the doors leading to 400 Hall was opened and sometimes they was closed.

---

[4] Rule 56 provides "[i]f the non-moving party has asserted additional facts, the moving party shall be allowed to respond to these additional facts . . . ." The record does not contain a response by Good Samaritan to these additional facts; we shall treat the additional facts as undisputed.

11. Attached as Exhibit A is a copy of the sign that was posted on the 400 Hall door.[5]

Ms. Christian argued that the facts that the 400 Hall doors did not have windows and that there was a sign on the door warning people to use caution when opening the doors was evidence that the doors constituted a dangerous condition of which Good Samaritan had notice.

Taking the strongest legitimate view of this evidence in Ms. Christian's favor, these facts do not establish that the doors constituted a defective or dangerous condition. The evidence provided by Good Samaritan showed that the doors were properly installed and functioning, that they complied with applicable codes, that Good Samaritan made periodic inspection of the doors, and that there were no reports of incidents or injuries regarding the doors. The material does not address the evidence produced by Good Samaritan and does not establish a genuine issue of fact for trial; there is no proof that the doors constituted a dangerous condition. At most, the evidence Ms. Christian produced shows a possibility rather than a probability of injury; this is insufficient to establish a dangerous or defective condition. See *Forrester v. City of Nashville,* 169 S.W.2d 860, 861 (1943).[6] Having determined that the doors did not constitute a dangerous or defective condition, Good Samaritan owed no further duty to Ms. Christian. *See Stewart v. Seton Corp.*, No. M2007-00715-COA-R3-CV, 2008 WL 426458, at *3 (Tenn. Ct. App. Feb. 12, 2008).[7]

---

[5] The sign stated: "Please be careful when opening this door because someone may be behind it."

[6]

7 Quillin on Municipal Corporations, section 2956, states:

> "To be actionable the obstruction must be dangerous, and the danger must be such as a reasonably prudent person would have anticipated as a natural and probable result. Expressed otherwise, the well settled rule applicable to cases of this character is that to establish negligence it must be shown that the injury sustained is one that would probably flow from allowing the obstruction as it existed."

Probability, not possibility, governs; that it is "possible" for some one out of many to trip over so slight a projection in the sidewalk as is here involved does not make it dangerous.

*Forrester v. City of Nashville*, 169 S.W.2d at 861.

[7]

 The premises owner owes a general duty to customers or guests to use reasonable care to make its premises safe. The duty of reasonable care requires that an owner maintain the

(continued...)

-8-

Ms. Christian also contends that Good Samaritan "has not negated the essential element of actual notice" of the defective or dangerous condition. She argues in this regard that "[t]he fact that a sign was placed on the door warning persons using the door" establishes that the door created a dangerous condition and that Defendant's action in placing the warning sign proof of that Defendant had "actual notice" that the doors constituted a dangerous condition. We do not agree.

The evidence established that the doors did not constitute a dangerous or defective condition; thus, there is no condition for which to charge Good Samaritan with notice and any resulting duty to visitors.

### III. CONCLUSION

Upon the record presented, summary judgment was properly granted to Good Samaritan; accordingly, we affirm the judgment of the trial court.

_____
RICHARD H. DINKINS, JUDGE

[7](...continued)
premises in a generally safe condition by removing or repairing potentially dangerous or defective conditions or by helping customers and guests avoid injury by warning them of the existence of a dangerous or defective condition on the premises of which the owner was or should have been aware. However, the owner is not "an insurer of the safety" of guests or customers on the premises, and the duty imposed on the owner does not include the responsibility to warrant the safety of a condition "for which no unreasonable risk is anticipated . . . ."

*Stewart v. Seton Corp.*, No. M2007-00715-COA-R3-CV, 2008 WL 426458, at *3-4 (Tenn. Ct. App. Feb. 12, 2008) (internal citations omitted).